UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMISSIONS IMPORT EXPORT S.A.,<br>　　　　　　　　　　Petitioner,<br><br>　　　　　v.<br><br>REPUBLIC OF THE CONGO and<br>ECREE LLC,<br>　　　　　　　　　　Respondents. | 19-mc-00195-KPF |

**RESPONDENT REPUBLIC OF THE CONGO'S MEMORANDUM IN
SUPPORT OF MOTION TO VACATE CERTIFICATE OF DEFAULT
<u>AND FOR SUMMARY DISMISSAL OF PETITION</u>**

**THE ASHCROFT LAW FIRM, LLC**
Michael J. Sullivan (*pro hac vice*)
Kimberly P. West (*pro hac vice*)
200 State Street, 7th Floor
Boston, MA 02109
Tel: (617) 573-9400
Fax: 617-933-7607
MSullivan@AshcroftLawFirm.com
KWest@AshcroftLawFirm.com

**TABLE OF CONTENTS**

BACKGROUND ................................................................................................................... 1

ARGUMENT ........................................................................................................................ 2

   I.   ROC'S MOTION TO VACATE UNDER RULE 55 SHOULD BE GRANTED BECAUSE ANY DELAY ON THE PART OF ROC WAS NOT WILLFUL, ROC HAS A MERITOROUS DEFENSE, AND COMMISIMPEX WILL NOT BE PREJUDICED ............ 2

   II.   BECAUSE COMMISIMPEX'S PETITION IS LEGALLY DEFICIENT ON ITS FACE, THIS COURT SHOULDVACATE THE DEFAULT AND SUMMARILY DISMISS THE PETITION................................................................................................................... 4

      A.  Commisimpex's Petition Is Facially Defective Because CPLR § 5225  Does Not Apply To Real Property ...................................................................................................... 6

      B.  Commisimpex's Petition Is Not Supported by Competent Evidence and Fails to Satisfy CPLR § 5225................................................................................................................ 7

         1.  Commisimpex's Source – Global Witness – Is A Not a Source of Competent Evidence.................................................................................................................. 7

         2. Recent Judicial Scrutiny Demonstrates the Unreliability of Materials Produced by Global Witness Campaigners................................................................................ 9

      C.  ROC Is Not in Possession of the 32G Condo................................................................ 12

      D.  Commisimpex's Petition Seeks Property That, Even If Belonging to ROC, Would Be Immune from Attachment Under 28 U.S.C. § 1610 ............................................................ 13

CONCLUSION................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases**

Arrowhead Capital Fin., Ltd. v. Seven Arts Entm't, Inc.,
   No. 14 CIV. 6512 (KPF), 2017 WL 3394604, at *3 (S.D.N.Y. Aug. 8, 2017) .......................... 4

Beauvais v. Allegiance Sec., Inc.,
   942 F.2d 838, 840 (2d Cir. 1991) ................................................................................ 5, 7

Bernard v. Lombardo,
   No. 16 CV. 863 (RMB), 2016 WL 7377240, at *2 (S.D.N.Y. Nov. 23, 2016) .......................... 6

CSX Transportation, Inc. v. Island Rail Terminal, Inc.,
   879 F.3d 462, 469 (2d Cir. 2018) .................................................................................. 4

DeFlora Lake Dev. Assocs., Inc. v. Hyde Park,
   689 F. App'x 93, 95 (2d Cir. 2017) ................................................................................ 6

Davis v. Musler,
   713 F.2d 907, 916 (2d Cir. 1983) .................................................................................. 3

Dussault v. Republic of Argentina,
   616 F. App'x 26 (2d Cir. 2015) ................................................................................... 13

Edrich v. MMAL Corp.,
   134 A.D.3d 935, 936 (N.Y. App. Div. 2015) .................................................................. 6

EM Ltd. v. Republic of Argentina,
   473 F.3d 463, 472–73 (2d Cir. 2007) ........................................................................... 13

Enron Oil Corp. v. Diakuhara,
   10 F.3d 90, 96 (2d Cir. 1993) ....................................................................................... 2

Gen. Motors Acceptance Corp. v. Norstar Bank of Hudson Valley,
   156 A.D.2d 876, 877 (3d Dep't 1989) ............................................................................ 5

Gryphon Dom. VI, LLC v. APP Int'l Fin. Co., B.V.,
   836 N.Y.S.2d 4 (1st Dep't 2007) ................................................................................... 6

HBE Leasing Corp. v. Frank,
   48 F.3d 623, 633 (2d Cir. 1995) ................................................................................... 5

Johnson v. New York Univ.,
   324 F.R.D. 65, 71 (S.D.N.Y. 2018) ............................................................................ 3, 4

Meehan v. Snow,
    652 F.2d 274, 277 (2d Cir. 1981)............................................................................................... 2

MRI Enterprises, Inc. v. Hausknecht,
    142 A.D.3d 1078, 1080 (N.Y. App. Div. 2016) ......................................................................... 6

N. Mariana Islands v. Canadian Imperial Bank of Commerce,
    990 N.E.2d 114, 119 (2013)........................................................................................................ 5

N. Mariana Islands v. Canadian Imperial Bank of Commerce,
    717 F.3d 266, 267 (2d Cir. 2013)................................................................................................ 4

Payne v. Garnett McKeen Lab., Inc.,
    232 A.D.2d 419, 419-20 (2d Dep't 1996).................................................................................. 5

State Farm Mut. Auto. Ins. Co. v. Cohan,
    409 F. App'x 453, 455 (2d Cir. 2011) ....................................................................................... 2

Tah v. Glob. Witness Publ'g, Inc.,
    No. CV 18-2109 (RMC), 2019 WL 4737116, at *7–8 (D.D.C. Sept. 27, 2019) ....... 9, 10, 11, 12

Tah, et al. v. Global Witness, et al.,
    No. 19-7132 (D.C. Cir. 2019) .................................................................................................. 10

Trustco Bank v. Strong,
    261 A.D.2d 25, 27 (4th Dep't 1999) ...................................................................................... 5, 7

**Statutes**

Foreign Sovereign Immunities Act ................................................................................................ 2

28 U.S.C. § 1610(a)(1) ................................................................................................................. 13

**Rules**

CPLR § 5225 ........................................................................................................... *passim*

CPLR § 5225(b) ................................................................................................................. 4,5,6,7

Fed. R. Civ. P. 55(c) .................................................................................................................. 1, 2

Fed. R. Civ. P. 69 .......................................................................................................................... 4

**Treatises**

3 Jack B. Weinstein, et al., NEW YORK CIVIL PRACTICE: CPLR ¶ 409.03, at 4-70 (2d ed. 2010).. 5

McKinney's CPLR § 5225(b) ................................................................................................. 9

McKinney's CPLR §§ 5225, 5227 .......................................................................................... 4

Respondent Republic of the Congo ("ROC") respectfully submits this Memorandum in Support of its Motion to Vacate Certificate of Default and for summary dismissal of the instant petition.

## BACKGROUND

On April 15, 2019, Petitioner Commissions Import Export S.A. ("Commisimpex") initiated this proceeding seeking turnover of a condominium unit in New York City, alleging that the condominium belongs to ROC on the basis of fraudulent conveyances. (Dkt. #1). The sole source for Commisimpex's allegations was a story by an activist organization posted five days earlier on April 10, 2019 (Dkt. #1-6), which prompted with a New York Times story that covered the release but did not corroborate any of the report's allegations. (Dkt. #1-5). ROC promptly issued a formal statement disclaiming any ownership in the condominium. See Declaration of Michael Sullivan dated January 3, 2020 ("Sullivan Decl.") ¶ 3 Ex. A.[1] However, it was not until September 2019 that ROC conferred with and directed counsel to respond to Commisimpex's petition, by which time a Clerk's Certificate of Default had been entered against ROC. (Dkt. #12).

After being granted a continuance by the court, counsel for ROC appeared at a hearing on December 16, 2019, after which the court issued an Order dated December 23, 2019 anticipating ROC's instant motion to vacate and providing the parties with instructions and deadlines. (Dkt. #33). Pursuant to the court's December 23 Order, ROC respectfully requests an order vacating the Clerk's Certificate of Default against ROC (Dkt. #12) on the grounds that ROC's default was not willful, Petitioner will not be prejudiced, and ROC has a meritorious defense.

While the instant motion pursuant to Fed. R. Civ. P. 55(c) supports vacatur of the Certificate of Default, ROC's meritorious defense additionally demonstrates that

---

[1] ROC's response to the Global Witness report was published via Twitter on April 11, 2019; available at https://twitter.com/ThMoungalla/status/1116377309072756736?s=20

1

Commisimpex's petition is appropriate for summary dismissal on the following grounds: 1) it is legally deficient under New York law, 2) it is unsupported by competent evidence, and 3) it seeks property that, even if it was within ROC's possession, custody or control (which it is not), would be immune under the Foreign Sovereign Immunities Act ("FSIA").

## ARGUMENT

### I. ROC'S MOTION TO VACATE UNDER RULE 55 SHOULD BE GRANTED BECAUSE ANY DELAY ON THE PART OF ROC WAS NOT WILLFUL, ROC HAS A MERITOROUS DEFENSE, AND COMMISIMPEX WILL NOT BE PREJUDICED

Rule 55(c) provides that a court may set aside an entry of default for good cause. Fed. R. Civ. P. 55(c). The Second Circuit has "advised district courts to consider three factors in deciding a Rule 55(c) motion: (1) whether the default was willful; (2) whether the moving party has presented a meritorious defense; and (3) whether setting aside the default would prejudice the party for whom default was awarded." State Farm Mut. Auto. Ins. Co. v. Cohan, 409 F. App'x 453, 455 (2d Cir. 2011) (citing Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993)). Where, as here, there has been a certificate of default by the Clerk of the Court, but no default judgment, the court decides the motion to vacate pursuant to Rule 55(c). The standard for setting aside an entry of default pursuant to Rule 55(c) is "lenient" and less rigorous than the standard for setting aside a default judgment pursuant to Rule 60(b). See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981) (describing the Rule 55(c) standard as "lenient"). Indeed, defaults "are particularly disfavored by the law when substantial rights are implicated or when substantial sums of money are demanded." Enron Oil, 10 F.3d at 97-98 (doubts should be resolved in favor of the defaulting party).

The record plainly shows that ROC's default was not the result of willfulness or any intent to cause needless delay. ROC retained counsel after this proceeding commenced, however

2

its Ministry of Justice was not aware of the default until informed by counsel during initial meetings in Brazzaville in September 2019.  Sullivan Decl. ¶ 2.  ROC immediately authorized counsel to appear in the instant proceeding, which counsel did September 25, 2019 (Dkt. # 24), promptly followed by ROC's request for adjournment of a conference scheduled for October 8, 2019 in order to provide counsel time to prepare for said conference. (Dkt. #27).  The court granted ROC's request and rescheduled the conference for December 16, 2019 (Dkt. #30), during which ROC indicated its intent to bring the instant motion to vacate.  As noted in the court's December 23, 2019 Order, the timing for ROC's motion is understandable as being made for reasons other than to cause delay, particularly given that ROC thought it advisable to obtain the court's permission before filing any motions.  (Dkt. #33).

The Second Circuit has established that "delay standing alone does not establish prejudice sufficient to defeat a motion to vacate a default." Johnson v. New York Univ., 324 F.R.D. 65, 71 (S.D.N.Y. 2018) (citing Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983)). "Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." Id.  Here, the granting of ROC's motion will not cause any prejudicial delay and will not thwart Commisimpex's ability to pursue the recovery it seeks, if such recovery is actually available in this proceeding.  Vacatur of the default will not create any of the conditions associated with prejudice described above, as ROC has steadfastly denied ownership or possession of the 32G Condo even before this proceeding was commenced.  The question of the ownership or possession of the real property at issue, whether by Ecree LLC or another third party, and thus its susceptibility to turnover, remains in the same doubtful state as the day this proceeding was

initiated.[2] The granting of ROC's motion will not cause prejudice to Commisimpex's efforts in this case.

ROC's motion to vacate should be granted for the additional reason that its defense is meritorious. Under New York law, "[t]he test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense. The defaulting defendant need only meet a low threshold to satisfy this factor." Johnson v. New York Univ., 324 F.R.D. 65, 71–72 (S.D.N.Y. 2018). As discussed in detail below, ROC's motion not only is supported by a meritorious defense, but that defense compels summary dismissal of the instant petition.

## II. BECAUSE COMMISIMPEX'S PETITION IS LEGALLY DEFICIENT ON ITS FACE, THIS COURT SHOULD VACATE THE DEFAULT AND SUMMARILY DISMISS THE PETITION

This proceeding was initiated pursuant to Fed. R. Civ. P. 69, which allows federal courts to enforce money judgments pursuant to the procedure of the state where the court is located. Petitioner seeks a turnover order under New York Civil Practice Law and Rules ("CPLR") § 5225(b), which allows a judgment creditor to execute upon property that belongs to a judgment debtor but is in the possession of a third party. N. Mariana Islands v. Canadian Imperial Bank of Commerce, 717 F.3d 266, 267 (2d Cir. 2013); Arrowhead Capital Fin., Ltd. v. Seven Arts Entm't, Inc., No. 14 CIV. 6512 (KPF), 2017 WL 3394604, at *3 (S.D.N.Y. Aug. 8, 2017). Turnover petitions brought under CPLR § 5225 constitute "special proceedings" characterized by speed, economy and efficiency. CSX Transportation, Inc. v. Island Rail Terminal, Inc., 879 F.3d 462, 469 (2d Cir. 2018); McKinney's CPLR §§ 5225, 5227.

In New York, "a petition in a special proceeding must be accompanied by competent

---

[2] On December 16, 2019 the Board of Managers of Trump International Hotel & Tower Condominium filed a Verified Complaint and Notice of Pendency against Ecree, LLC in NY Supreme Court, County of New York, for recovery of unpaid common charges, copies of which are provided herewith. Sullivan Decl. ¶ 4, Ex B.

4

evidence" showing the petitioner's entitlement to judgment in its favor. Trustco Bank v. Strong, 261 A.D.2d 25, 27 (4th Dep't 1999) ("Unlike a complaint in a plenary action, a petition in a special proceeding must be accompanied by competent evidence raising a material issue of fact."). "In order to withstand summary determination, the evidence submitted must be competent." 3 Jack B. Weinstein, et al., NEW YORK CIVIL PRACTICE: CPLR ¶ 409.03, at 4-70 (2d ed. 2010). "A party cannot rely on conclusory statements or conjecture." Id.

The Second Circuit has established a two-prong test for analyzing claims under CPLR § 5225(b), whereby the creditor must show (1) that the debtor has an interest in the property the creditor seeks to reach, and (2) either the judgment debtor is entitled to the possession of the property or the creditor's rights are superior to those of the possessing party. Beauvais v. Allegiance Securities, Inc., 942 F.2d 838, 840 (2d Cir. 1991). For court to issue a turnover order requiring a third party to deliver property in which judgment debtor has interest, that entity itself must have actual, not merely constructive, possession or custody of assets sought. N. Mariana Islands v. Canadian Imperial Bank of Commerce, 990 N.E.2d 114, 119 (2013) ("[A] section 5225(b) turnover order cannot be issued against a garnishee lacking actual possession or custody of a judgment debtor's assets or property."); McKinney's CPLR § 5225(b). Further, it is "the judgment creditor [that] bears the burden of proof that the person is actually in custody or control of such money or other personal property." Payne v. Garnett McKeen Lab., Inc., 232 A.D.2d 419, 419-20 (2d Dep't 1996).

Finally, in a special proceeding under CPLR § 5225(b), "a court may grant summary relief where there are no questions of fact, but 'it must conduct a trial on disputed issues of fact on adverse claims in a turnover matter….'" HBE Leasing Corp. v. Frank, 48 F.3d 623, 633 (2d Cir. 1995) (quoting Gen. Motors Acceptance Corp. v. Norstar Bank of Hudson Valley, 156

5

A.D.2d 876, 877 (3d Dep't 1989)). See also Edrich v. MMAL Corp., 134 A.D.3d 935, 936 (N.Y. App. Div. 2015) (affirming summary dismissal of CPLR § 5225(b) turnover proceeding where petitioner failed to raise a triable issue in alleging alter ego theory); MRI Enterprises, Inc. v. Hausknecht, 142 A.D.3d 1078, 1080 (N.Y. App. Div. 2016) (affirming summary dismissal where judgment creditor failed to allege facts sufficient to satisfy CPLR § 5225(b)).

### A. Commisimpex's Petition Is Facially Defective Because CPLR § 5225 Does Not Apply To Real Property

By its own terms, Commisimpex's petition seeks turnover of "a condominium unit known as Unit 32G at 1 Central Park West" in New York City ("32G Condo") under CPLR § 5225(b) and specifically asserts that "this is a proceeding that affects title to, and the possession, use or enjoyment of, real property" under New York law. (Dkt. #1 at ¶ 1). That recognition is fatal to its claim because CPLR § 5225 applies only to "money or personal property," and not to real property. DeFlora Lake Dev. Assocs., Inc. v. Hyde Park, 689 F. App'x 93, 95 (2d Cir. 2017) (citing Gryphon Dom. VI, LLC v. APP Int'l Fin. Co., B.V., 836 N.Y.S.2d 4 (1st Dep't 2007). In other words, Commisimpex initiated this turnover proceeding under the mistaken belief that CPLR § 5225(b) applies to real property when it plainly does not. Hyde Park, 689 F. App'x at 95; Bernard v. Lombardo, No. 16 CV. 863 (RMB), 2016 WL 7377240, at *2 (S.D.N.Y. Nov. 23, 2016) (denying turnover application seeking real estate in Texas); Gryphon, 836 N.Y.S.2d 4, 12 (App. Div. 2007) (rejecting plaintiffs' argument that trial court should have ordered defendants to turn over paper mills because they "clearly constitute[d] real property rather than personal property"). Accordingly, vacatur of the previously filed Certificates of Default and summary dismissal of this proceeding are warranted.

### B. Commisimpex's Petition Is Not Supported by Competent Evidence and Fails to Satisfy CPLR § 5225

As set forth above, Commisimpex's petition rests on the erroneous belief that CPLR § 5225 applies to real property. However, even if — for the sake of argument — the petition did not have that fatal legal defect (which ends the analysis), the petition still fails the two-step analysis provided by CPLR § 5225(b) for determining whether the third party must turn over the property to the creditor. Beauvais v. Allegiance Sec., Inc., 942 F.2d 838, 840 (2d Cir. 1991).

Commisimpex's petition fails to meet step one of the Beauvais test, which requires a showing, supported by competent evidence, that ROC has an interest in the property at issue. Trustco Bank v. Strong, 261 A.D.2d 25, 27 (4th Dep't 1999). Rather than providing competent evidence to support its petition, Commisimpex relies solely on a hearsay-filled report by activist organization Global Witness ("GW") as the factual source to support its petition. (Dkt. #1-6). Commisimpex cites no primary sources or even secondary sources and merely attaches the GW report and a New York Times article reciting, uncritically, some of the same unsubstantiated allegations in GW's report. (Dkt. #1-5). In the absence of competent evidence to sustain Commisimpex's petition and satisfy CPLR § 5225, dismissal is warranted.

#### 1. Commisimpex's Source – Global Witness – Is A Not a Source of Competent Evidence

Commisimpex initiated this proceeding on April 15, 2019, only five days after GW published its report titled "Trump's Luxury Condo: A Congolese State Affair" alleging that the "daughter of the kleptocratic ruler of Republic of Congo used millions of dollars of apparently stolen funds to buy a luxury apartment at the Trump International Hotel & Tower in New York City." (Dkt. #1, #1-6). GW's sensational report initially garnered the attention of fellow activists and generated an uncritical parroting by the New York Times and other media outlets. The

defamatory story was immediately rebuked by a high ranking official of the Republic of Congo. Sullivan Decl. ¶ 3, Exhibit A. However, despite the broad exposure the GW report enjoyed upon its release, over eight months later the key claims and assertions of the report remained uncorroborated by other reputable journalists and no tangible evidence or documented proof has surfaced to confirm any allegation in GW's report.

Despite its deft mimicry of investigative reportage, GW does not, in fact, purport to be an unbiased reporter of news, staffed by journalists or investigator fact-finders. GW does not hold itself to recognized journalistic standards and ethics, but instead explicitly describes its leadership and staff as "campaigners" and its mission "to drive campaigns against impunity"[3] against what it views as corruption. See Sullivan Decl. ¶ 4, Ex. B at p.2. The GW report submitted by Commisimpex concludes by inviting readers to contact "Mariana Abreu, *Campaigner, Corruption Investigations Team*." (Dkt. #1-6, at ECF p. 20, emphasis in original).[4] Other GW personnel credited with producing content regarding ROC are likewise described as "campaigners" by GW and other publications.[5] See Sullivan Decl. ¶ 5, Ex. C. The dominant, driving aim of GW's work is to agitate for particular political, legal and regulatory outcomes — not practice news journalism or formal legal investigations.

A close reading of GW's report confirms GW's high tolerance for speculation and allegations threaded together by mere innuendo. GW indicates that it has reviewed some primary documents, but does not share any with the reader, and makes no connection linking

---

[3] Global Witness IRS Form 990 for 2017, available at
https://web.archive.org/web/20191030094119/https://www.globalwitness.org/documents/19599/2017_990_Form_signed.pdf
[4] See Sullivan Decl. ¶ 6 Exs. D and E. As of December 2019, Mariana Abreu still held the title of *Campaigner* but appears to have reassigned to the *Forest Investigations Team*, see
https://web.archive.org/web/20191231221434/https://www.globalwitness.org/en/campaigns/corruption-and-money-laundering/trumps-luxury-condo-a-congolese-state-affair/
[5] GW uses the terms "campaigner" and "journalist" interchangeably in describing its personnel, in some instances in the same GW article. See Sullivan Decl. ¶ 6 Ex. D.

ROC with the 32G Condo directly.[6]  Yet, Commisimpex relies entirely on the GW report to support the fraudulent transfer claims in its petition, essentially outsourcing the task of researching and developing the factual allegations necessary to support the complex alter ego theory presented in its petition.  The GW report submitted by Commisimpex is a *campaign device* by a political activist organization, meant to provoke outrage, generate social media clicks, and build political pressure to advance GW's agenda and promote its brand.  The regurgitation by the New York Times does not transform GW's advocacy piece into competent evidence to support the petition currently before the court.  As such, Commisimpex has not met its burden to support its petition under CPLR § 5225.

## 2. Recent Judicial Scrutiny Demonstrates the Unreliability of Materials Produced by Global Witness Campaigners

In a recent defamation case, a GW report similar to the report submitted here by Commisimpex was subjected to close judicial scrutiny and determined to contain defamatory content.  In Tah v. Global Witness, a former Liberian official and the CEO of Liberia's national oil company brought defamation claims against GW based on a GW report implying that the plaintiffs received bribes to facilitate the sale of off-shore drilling rights.  In deciding GW's motion to dismiss, the court methodically analyzed key passages of GW's report and concluded that, while the evidence did not meet the heightened "actual malice" standard for defamation involving public officials, GW did in fact make a defamatory statement concerning the plaintiffs. Tah v. Glob. Witness Publ'g, Inc., No. CV 18-2109 (RMC), 2019 WL 4737116, at *7–8 (D.D.C. Sept. 27, 2019).  The plaintiffs appealed the dismissal, and GW cross-appealed an earlier denial

---

[6] Significantly, among the series of transactions that Commisimpex (citing GW's report) is alleging to be fraudulent, the only conveyance that matters for purposes of fraudulent transfer analysis is the first one, made from ROC to Asperbras, LLC, *which GW's report acknowledges was made for work performed pursuant to bona fide public works contracts*.  (Dkt. #1-6 at ECF p. 8).  GW's report merely criticizes these contracts as "inflated" according to a French newspaper, but does not challenge Asperbras's right to receive payment for its work in ROC.  Accordingly, the alleged subsequent transactions by Asperbras or its associated entities after the initial, legitimate payment by ROC, are of no relevance to the fraudulent transfer theory alleged in this proceeding.

of its motion to dismiss under the D.C. Anti-SLAPP Act. The parties are scheduled to begin brief submissions in the D.C. Circuit Court of Appeals in February 2020. Tah, et al. v. Global Witness, et al., No. 19-7132 (D.C. Cir. 2019).

The Tah trial court's analysis is instructive, as it outlines the defamatory implications of GW's report,[7] demonstrating how GW's presentation, framing, and editorial decisions were intended to persuade the reader that plaintiffs were involved in bribery, despite the lack of evidence. Regarding GW's presentation of its report, the court observed:

> The implication began with the cover page. The title "Catch me if you can" clearly suggested wrongdoing, and specifically wrongdoing for which there is not yet enough evidence to convict. Below the title was an image of a businessman running away, already partially off the page, as if almost beyond capture, followed by the caption "Exxon's complicity in Liberian oil sector corruption and how its Washington lobbyists fight to keep oil deals secret." *** Whatever other details the Report offered, these headlines provided the context and conclusions of its authors at Global Witness.

Tah, 2019 WL 4737116, at *6.

The court noted GW's framing of unproven allegations by appending them to lengthy recitations of historical occurrences:

> For almost 20 pages, the Report then detailed previous corruption or concerns regarding corruption in the oil sector in Liberia. In that specific context, the Report opined that "[t]here are grounds to suspect that [Broadway Consolidated] obtained Block 13 because the company was likely part-owned by government officials with the power to influence the award of oil licenses." *** With its context of historical corruption and suspicions of further corruption, a reasonable reader could have understood the heading of the section, "Monrovia [Liberia], 2013: Awash in cash," with the subtitle "Some Unusual, Large Payments," to be referring to bribery payments in euphemistic language. *Id.* at 30.

Tah, 2019 WL 4737116, at **5-6.

The court noted GW's use of charts to conflate distinct events from different timeframes to lead readers to GW's intended conclusions:

---

[7] A copy of the GW report analyzed by the Tah court is provided herewith (Sullivan Decl. ¶ 6 Ex. F), and is available at https://www.globalwitness.org/en/campaigns/oil-gas-and-mining/catch-me-if-you-can-exxon-complicit-corrupt-liberian-oil-sector/

> The chart prepared by Global Witness and included in the Report tracked payments from Exxon … to bonuses paid by NOCAL to six Liberian officials involved in the negotiation, including Plaintiffs. *Id.* at 31. The chart specifically listed the amount of each official's bonus and the critical role each of them played in the negotiations, which had the effect of literally drawing a line between Exxon's money, the bonuses, and the sale of the license for Block 13. *** The Court finds that a reasonable reader easily could have understood the Report to imply that the 2006-07 bribes and the 2013 HTC bonuses were of a piece.

Tah, 2019 WL 4737116, at *6.

Regarding GW's linguistic techniques, the court noted:

> For example, the Report admitted that NOCAL described the challenged payments to staff and the HTC as "bonuses," but then continued to place quotation marks around the word bonuses, *i.e.*, "bonuses," and generally stated that the payments were "called" bonuses instead of endorsing use of that term itself. *See id.* at 30-32. These linguistic choices could be understood to distinguish between NOCAL's use of "bonuses" to hide "bribes," which is what the Report inferred they actually were.

Tah, 2019 WL 4737116, at *6.

Finally, the court addressed GW's narrow admission that it had *no evidence* to support a major aspect of its report and further rejected GW's attempt to avoid responsibility for the intended implications of its evidence-free assertions:

> Global Witness argues that the Report explicitly negated any inference that Plaintiffs accepted bribes because it expressly stated that "Global Witness has no evidence that Exxon directed NOCAL to pay Liberian officials, nor that Exxon knew such payments were occurring." *Id.* at 31. First, of course, this statement was about ExxonMobil and not NOCAL, the actual payor. Second, it did not negate the inference that ExxonMobil's money was, in part, paid as bribes to the NOCAL representatives who signed the lease agreement. However, this statement did admit that the Global Witness suspicions and calls for investigations of ExxonMobil and NOCAL lacked *any* evidence that the former had involvement in monies paid to employees of the latter. At best, it might have been read to leave the question open as to why NOCAL paid such monies to its own personnel.

Tah, 2019 WL 4737116, at *6.

In its motion to dismiss, GW argued that it was merely asking whether the payments to the plaintiffs were illegal. The court rejected this argument:

> But Global Witness is clearly doing more than "just asking questions" when it calls for an official investigation by governmental bodies; it reasonably implies that there is evidence

11

to justify an investigation of criminal liability, and thereby potential criminal liability itself. Further, capping the Report with a question only protects the question, not the other statements that imply bribery.

Tah, 2019 WL 4737116, at *6.

The Tah trial court's analysis provides an apt caution for this and other courts that are asked to make determinations based on alleged evidence sourced from GW campaigners.

### C. ROC Is Not in Possession of the 32G Condo

In addition to failing to rely upon competent evidence, Commisimpex fails to show ROC is in possession of the real property at issue. In fact, Commisimpex's blind reliance on GW's hearsay-riddled and uncorroborated report cannot as a matter of law overcome the official repudiation of any interest in the 32G Condo issued April 11, 2019. Sullivan Decl. ¶ 3 Ex. A. Further, the only other on-the-record statement by anyone associated with the 32G Condo *is also an explicit denial of ROC's ownership*, published in a newspaper article cited by GW as one of the few verifiable sources appearing its report. (Dkt. #1-6, at ECF p.7).

GW's report identifies Jose Veiga as the representative for Asperbras, the Brazilian company in receipt of the initial payment of funds starting a chain of transactions that allegedly connect ROC with the 32G Condo. GW characterizes Veiga as close to the ROC President's family, playing a role in the buying of the condominium. In 2017, Micael Pereira, a Portuguese investigative journalist based in Lisbon interviewed Veiga in regard to property. Veiga told Pereira that: "The apartment in question is owned by a company of which I am the shareholder. The acquisition made by this company was financed by my own means, in a business that has nothing to do with third parties, namely the family of the President of Congo."[8] (Dkt. #1-6, at ECF p.7). These statements by Veiga, made in a published interview with a professional

---

[8] Counsel for ROC contacted former K&L Gates attorney involved in the formation of Ecree LLC who indicated that K&L Gates' due diligence for Ecree's purchase of the 32G Condo did not reveal anything improper about the source of funds and did not reveal any involvement by ROC. Sullivan Decl. ¶ 8.

12

journalist, constitute one of the rare confirmable sources for GW's allegations that is capable of providing competent evidence, but actually serves to undermine Commisimpex's petition.

Finally, even if the rest of GW's report provided some modicum of competent evidence for this proceeding, it would likely have an adverse effect on Commisimpex's petition. On April 11, 2019, ROC's Minister of Communication and Media immediately issued an official response, denying ownership of the 32G Condo, citing Veiga's claim to ownership, GW's assertion that a company named Ecree LLC purchased the condo, and GW's assertion that "the (name of) Claudia Sassou-Nguesso does (appear) on Ecree's business documents obtained by Global Witness."[9] Assuming these assertions, as offered originally by GW are true, then ROC would have no legal access to the condo and would not be entitled to possession. See Dussault v. Republic of Argentina, 616 F. App'x 26 (2d Cir. 2015) (judgment debtor must have possession of or ability to retrieve the disputed assets to satisfy turnover analysis).

### D. Commisimpex's Petition Seeks Property That, Even If Belonging to ROC, Would Be Immune from Attachment Under 28 U.S.C. § 1610

Finally, even assuming the 32G Condo belonged to ROC (which ROC unequivocally denies), the 32G Condo would nevertheless be immune to attachment because, under 28 U.S.C § 1610, assets of a foreign state can be attached only if such assets are "used for a commercial activity in the United States." 28 U.S.C. § 1610(a)(1) (permitting post judgment attachment of a foreign state's property "used for a commercial activity in the United States"); EM Ltd. v. Republic of Argentina, 473 F.3d 463, 472–73 (2d Cir. 2007). Here, Commisimpex's petition contains no allegations or evidence that the 32G Condo is anything but a purported personal residence. Nor is there any allegation or evidence before the court suggesting that the 32G Condo, irrespective of its owner, is used for commercial activity. Consequently, this court lacks

---

[9] Sullivan Decl. ¶ 3, Ex. A.

a statutory basis for entering a default against ROC (and for that matter, exercising personal jurisdiction over ROC) and this proceeding should be summarily dismissed.

## CONCLUSION

For the foregoing reasons, ROC's motion to vacate should be granted and this court should summarily dismiss the petition.

Date:   January 3, 2020                                  Respectfully Submitted,

/s/ Michael J. Sullivan
Michael J. Sullivan (*pro hac vice*)
/s/ Kimberly P. West
Kimberly P. West (*pro hac vice*)
Ashcroft Law Firm, LLC
200 State Street, 7th Floor
Boston, MA 02109
(P) 617-573-9400
(F) 617-933-7607
MSullivan@AshcroftLawFirm.com
KWest@AshcroftLawFirm.com