# ASHCROFT SULLIVAN™

February 18, 2020

<u>**VIA ECF**</u>

The Honorable Katherine Polk Failla
United States District Judge
United States District Court for the Southern District of New York
Attn: Clerk's Office
40 Foley Square
New York, New York 10007

> Re: *Commissions Import Export S.A. v. Republic of the Congo and Ecree, LLC*, 1:19-mc-00195-KPF

Dear Judge Failla,

We represent Respondent Republic of the Congo ("Republic") and submit this letter in response to Order to Show Cause entered by Your Honor on January 28, 2010 (Dkt. #49) in the case referenced above.

While this letter touches upon the proceedings in the U.S. District Court for the District of Columbia ("D.D.C."), we want to make it clear that our representation of the Republic does not extend to any D.D.C. proceedings at this time.

With that in mind, and in an effort to be responsive to the concerns articulated by Your Honor, we offer the following.

1. **There Is No Certainty That an Attachable Asset Will Be Found In New York.**

At present, Petitioner Commissions Import Export S.A. ("Petitioner") has not established a clear basis to pursue collection against any asset in New York. Petitioner has pled what can charitably be described as a highly attenuated fraudulent transfer theory in the instant turnover proceeding, which the Republic has vigorously denied and refuted in its Motion to Vacate. (Dkt. ## 34-35). As such, to use the current turnover proceeding in S.D.N.Y. as a forum to amend prior judgment amounts or seeks an order under 28 U.S.C. §1610(c) is at best premature, and more likely improper as a matter of federal judicial comity.

2. **The Currency Conversion Is Not a Merely Ministerial Task.**

Petitioner seeks to amend the October 9, 2013 judgment (the "2013 Judgment") which was registered in S.D.N.Y. in 2014 (the "2014 S.D.N.Y. Judgment") by converting the amount to U.S. Dollars from Euros. However, contrary to the implication of Petitioner's February 10th letter, the converting of an arbitration award involving differences in exchange rates is not a mere ministerial task, but rather a substantive decision that can dramatically alter the real value of the arbitration award. As such, the conversion from Euros to Dollars and the attendant determinations of

substantive rights that seems best suited to the court in which the original judgment was litigated. As noted in a D.D.C. decision in 2012:

> There may be little reason, in theory, for a court confirming a foreign arbitration award to deny a party's request to convert that award into U.S. currency. And it is quite possible that the exchange rates in place at the time of the arbitration award should later be given effect by the court when undertaking such a conversion. But the latter proposition, in particular, cannot be taken for granted. A substantial shift in the exchange rate of a foreign currency between the date of the arbitration award and the date of judgment could dramatically alter the real value in U.S. dollars of the arbitration award. Therefore Continental's entitlement to conversion of the foreign currencies at specific exchange rates implicates the true value of the judgment entered in its favor and thus the substance of its claim on the merits.
>
> ***
>
> Nowhere at any stage of this case did the parties address Continental's right to have its foreign-currency awards converted into U.S. dollars at the exchange rates that were in effect when the arbitration award was issued. The Order and Judgment reflects no intent of the Court on that score, and converting the currencies at those rates now would require more than a "completely ministerial task" of "do[ing] the calculation and mak[ing] the amount official." Kosnoski v. Howley, 33 F.3d 376, 379 (4th Cir. 1994). Instead, it would require making a substantive determination about Continental's rights not previously rendered.

Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria, 850 F. Supp. 2d 277, 283 (D.D.C. 2012) (holding in abeyance motion to have foreign-currency awards converted into U.S. dollars at the exchange rates that were in effect when the arbitration award was issued). Given the substantive rights implicated in the currency conversion of the judgment, this determination appears best reserved for the federal court in the District of Columbia. See Leidos, Inc. v. Hellenic Republic, 881 F.3d 213, 218 (D.C. Cir. 2018) (noting it is appropriate to enter judgment in foreign currency under some circumstances, "particularly when the commercial activity took place in that currency," and observing that "District of Columbia law permits—and sometimes requires—a foreign-currency judgment.").

Petitioner cites New York Judiciary Law § 27(b) to contend that conversion of the 2014 Judgment from Euros to Dollars is mandatory, but this argument fails to address the issue of the applicable exchange rate for such a conversion. Further, Petitioner fails to explain why it did not bring its conversion request at an earlier date. Leidos, Inc. v. Hellenic Republic, 881 F.3d 213, 219 (D.C. Cir. 2018) ("Leidos could have asked for dollars instead of euros at any time before judgment; it chose not to. The value of the euro is published daily on the foreign exchange market; it was thus available to Leidos long before judgment and Leidos does not offer any reason for its delay in seeking currency conversion.").

To borrow the characterization of the Leidos court, "the murky waters of currency conversion in federal court" involve determinations that go beyond mere ministerial functions. 881 F.3d at 220. As such, in addition to being premature, Petitioner's instant motion appears more

aptly suited for the court responsible for the underlying judgment and its attendant substantive issues.

### 3. There Does Not Appear to Be Any Legal or Equitable Basis for a Reasonable Time Determination Under 28 U.S.C. § 1610(c) in S.D.N.Y. at This Time.

As implied in Your Honor's Order, the basis for the S.D.N.Y. to decide a 28 U.S.C. § 1610(c) motion is not readily apparent. The Republic would note that the two cases cited by Petitioner provide a descriptive rather than normative analysis for Your Honors. The relief sought by the moving parties in both Levin v. Bank of New York, No. 09 CV 5900 RPP, 2011 WL 812032, at *4 (S.D.N.Y. Mar. 4, 2011) and Harrison v. Republic of Sudan, No. 13-MC-80116 JSW, 2013 WL 3815660, at *5 (N.D. Cal. July 22, 2013) was not opposed by either judgement debtor, respectively, and accordingly the weight of those decisions does not fall on the point Petitioner is seeking to make.

Finally, Your Honor should be aware of Petitioner's own actions in the D.D.C. proceedings that are not consistent with its efforts here. Petitioner already obtained an Order pursuant to 28 U.S.C § 1610(c) on June 14, 2017 *in D.D.C.* regarding the October 9, 2013 Amended Default Judgment ("2013 Judgment").[1]  The Republic would simply point out that divergence between Petitioner's previous efforts and its contentions here.

Respectfully submitted,
**THE ASHCROFT LAW FIRM, LLC**

/s/ Michael J. Sullivan
200 State Street, 7th Floor
Boston, MA 02109
(P) 617-573-9400
MSullivan@Ashcroftlawfirm.com

*Counsel for Republic of The Congo*

---

[1] https://www.courtlistener.com/recap/gov.uscourts.dcd.159932/gov.uscourts.dcd.159932.86.0.pdf