UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMISSIONS IMPORT EXPORT S.A.,<br>Petitioner,<br><br>v.<br><br>REPUBLIC OF THE CONGO and<br>ECREE LLC,<br><br>      Respondents. | No. 19-mc-00195-KPF |

**RESPONDENT ECREE LLC'S MEMORANDUM IN SUPPORT OF MOTION TO
<u>VACATE CERTIFICATE OF DEFAULT</u>**

Nixon Peabody LLP
Daniel A. Schnapp
55 West 46th Street
New York, NY 10036
(212) 940-3000
dschnapp@nixonpeabody.com

Table of Contents

Page

BACKGROUND ................................................................................................................ 1

ARGUMENT .................................................................................................................... 3

I. ECREE LLC'S MOTION TO VACATE UNDER RULE 55 SHOULD BE GRANTED. 3

    A. Any delay caused by Ecree LLC was not "Willful" ............................................... 4

    B. Vacating the entry of default will not prejudice Commisimpex ............................. 4

    C. Ecree LLC has Meritorious Defenses .................................................................... 6

CONCLUSION ................................................................................................................ 11

# **TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

Davis v. Musler,
　713 F.2d 907 (2d Cir.1983)..................................................................................................5

Enron Oil Corp. v. Diakuhara,
　10 F.3d 90 (2d Cir. 1993)..................................................................................................5, 6

Johnson v. New York Univ.,
　324 F.R.D. 65 (S.D.N.Y. 2018) ..............................................................................3, 4, 5, 6

Meehan v. Snow,
　652 F.2d 274 (2d Cir. 1981)..................................................................................................3

S.E.C. v. McNulty,
　137 F.3d 732 (2d Cir. 1998)..................................................................................................4

S.E.C. v. Vogel,
　49 F.R.D. 297 (S.D.N.Y. 1969) ............................................................................................3

Tah v. Glob. Witness Publ'g, Inc.,
　No. CV 18-2109 (RMC), 2019 WL 4737116 (D.D.C. Sept. 27, 2019).....................................7

**Rules**

CPLR § 5225(b)................................................................................................................2, 9, 10

Fed. R. Civ. P. 55(c) ..............................................................................................................3

Respondent Ecree LLC (hereinafter "Ecree") respectfully submits this Memorandum in Support of its Motion to Vacate Certificate of Default entered against Ecree on August 26, 2019.

## BACKGROUND

Petitioner Commissions Import Export S.A. ("Commisimpex") initiated this proceeding on April 15, 2019 by filing its Petition to turnover property, namely a condominium unit 32G located at 1 Central Park West, New York, New York (the "Condominium") owned by Respondent Ecree LLC.  Pet. for Turnover of Property ("Pet.") at ECF No. 1.

Commisimpex alleges that Ecree is the "fraudulent transferee" of Respondent Republic of the Congo ("ROC").  Pet. at 1.  Commisimpex alleges that ROC transferred illicit funds to Ecree that Ecree eventually used to purchase the Condominium, and that the Condominium was purchased for the benefit of Claudia Sassou-Nguesso, the daughter of the President of ROC.  Pet ¶ 13.

The Petition for Turnover of Property, however, is based upon uncorroborated speculation, hearsay, and innuendo obtained from a purported "news" item published online by an activist organization, known as "Global Witness."  Notably, the Petition is not based upon any actual evidence of wrongdoing.  Absent such evidence, this Court should not cause Ecree to be fleeced of its property.

Even if the Petitioner had marshalled actual evidence of wrongdoing, which it did not, this matter should still be litigated on its merits because Ecree has not willfully defaulted and has significant, meritorious defenses.

The default was not willful because Ecree immediately retained counsel after learning of this proceeding, and only after Ecree's prior law firm refused service of process.

Commisimpex apparently attempted service upon Ecree on May 20, 2019 by serving K&L Gates, the law firm that previously represented Ecree in its purchase of the Condominium,

3

but K&L Gates refused service. ECF No. 5. Commisimpex also filed an Affidavit of Service, stating that on May 10, 2019, it served the New York State Department of State with the Notice of Petition, Petition, and Civil Cover Sheet. ECF No. 6. However, it was not until January 2020 that Ecree learned of the Petition, conferred with, and directed counsel to respond to Commisimpex's Petition. By that time, a Clerk's Certificate of Default had been entered against Ecree. ECF No. 11.

Counsel for Ecree promptly filed a letter notifying the Court of its appearance in this matter, respectfully requesting a briefing schedule for filing a motion to vacate the Clerk's Certificate of Default, and asking that the Court refrain from ruling on the pending motion for default until Ecree submitted its papers. ECF No. 47. Petitioner did not object to this request. As set forth below, Ecree's actions demonstrate that it did not willfully avoid responding to the Petition.

Further, as set forth below, Ecree has several meritorious defenses. First, based upon the fact that Petitioner has not established that ROC has any ownership interest in the Condominium and, therefore, Ecree cannot be considered to be the "fraudulent transferee" of the Condominium.[1]

Second, the Petition is also fatally defective because it seeks the turnover of property under CPLR Section 5225(b), which does not apply to real property.

Third, the funds used for the purchase of the Condominium were obtained through work performed by José Veiga, who performed work on behalf of a company in which Mr. Veiga is a shareholder, known as Asperbras, including the building of 12 hospitals and water infrastructure projects in the Republic of the Congo. Tr. of Oral Arg. at 7 (Dec. 16, 2019) at ECF No. 36.

---

[1] The Court is respectfully referred to the motion papers filed by ROC seeking to vacate the Certificate of Default.

Asperbras has been in business since 1966.  Id.  Under these circumstances, this matter must be resolved on the merits.

Accordingly, Ecree respectfully requests the Court to vacate the Clerk's Certificate of Default against Ecree pursuant to Fed. R. Civ. P. 55(c) because Ecree's default was not willful, Petitioner will not be prejudiced, and Ecree has meritorious defenses.

## ARGUMENT

**I.     ECREE LLC'S MOTION TO VACATE UNDER RULE 55 SHOULD BE GRANTED**

Under Rule 55(c), where the Clerk of the Court has issued a certificate of default, but no entry of default judgment has been made, the Court may set aside the entry of default judgment. Fed. R. Civ. P. 55(c).  The Court may set aside the entry for default judgment where "good cause" has been shown.  Id.  When considering "good cause," the Second Circuit recognizes three main factors in determining whether to relieve a party of default:  first, whether the default was willful; second, whether setting aside the default would prejudice the adversary; and third, whether the moving party has presented a meritorious defense.  Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).

This is a "lenient standard" as default judgment is generally not favored by the law and is seen as an "extreme sanction" or a "weapon of last, rather than first, resort." Meehan, 652 F.2d at 277.  In determining whether good cause has been shown, any doubt should be resolved in favor of setting aside default so that courts can make determinations based on the merits of the case. Johnson v. New York Univ., 324 F.R.D. 65, 69-70 (S.D.N.Y. 2018); S.E.C. v. Vogel, 49 F.R.D. 297, 299 (S.D.N.Y. 1969).

### A. Any delay caused by Ecree LLC was not "Willful"

In the Second Circuit, a default is only willful where the conduct is "more than merely negligent or careless," Johnson, 324 F.R.D. at 70 (quoting S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998)). Delay causing the entry of default generally may be excused unless "the conduct of counsel or the litigant was egregious and was not satisfactorily explained," S.E.C. v. McNulty, 137 F.3d at 738.

The record clearly shows that any delay caused by Ecree was not willful. In fact, Ecree was unaware of this matter and unaware of the Clerk's Certificate of Default until January 2020. Decl. António José da Silva Veiga in Supp. Mot. Vacate Cert. Default J. ¶ 16 ("Veiga Decl."). Ecree was also unaware of the United States District Court for the District of Columbia judgments that underlie this proceeding as Ecree was never a party to those actions.

Ecree had previously retained the law firm K&L Gates LLP in 2014 to represent it in its purchase of the Condominium. Veiga Decl. ¶ 4. While K&L Gates' representation of Ecree did continue after the purchase of the Condominium, the representation ended prior to the filing of this Petition. Accordingly, K&L Gates apparently did not accept service on behalf of Ecree, and Ecree did not have any knowledge of this action until January 2020. Veiga Decl. ¶ 16.

As soon as Ecree was apprised on this action, it immediately authorized counsel for Ecree to appear in this case and counsel filed its appearance the same day. Veiga Decl. ¶ 17. On the same day, counsel for Ecree corresponded with counsel for Commisimpex and also wrote to the Court to request a briefing schedule for filing its motion to vacate and to ask that the Court refrain from ruling on the pending motion for default until Ecree submitted its papers. ECF No. 11. Petitioner did not object to these requests. ECF No. 48.

### B. Vacating the entry of default will not prejudice Commisimpex

In the Second Circuit, "'delay standing alone does not establish prejudice' sufficient to defeat a motion to vacate a default." Johnson, 324 F.R.D. at 71 (quoting Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993)). Factors that demonstrate prejudice to the party for whom default was awarded include whether the "delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." Davis v. Musler, 713 F.2d 907 (2d Cir.1983).

Commisimpex cannot show any prejudice. Any delay allegedly caused by Ecree will not result in any loss of evidence, will not create any difficulties for discovery, and will not provide an opportunity for fraud or collusion. To the contrary, discovery will show that Ecree is the lawful owner of the Condominium and that the funds used to purchase the Condominium were not illegally or fraudulently transferred from ROC. Ecree was the lawful purchaser of the Condominium at the time of the sale, and Ecree remains the lawful owner of the property. Veiga Decl. ¶ 5, 10. These facts remain unchanged since the Petition was filed.

Additionally, delay caused by Ecree will not further prejudice Commisimpex because ROC's motion to vacate is still outstanding. ECF No. 34. Should the Court exercise its discretion and grant ROC and Ecree's motions to vacate, Commisimpex will not be unfairly prejudiced by Ecree's delay any more than it would be by ROC's delay. Furthermore, vacating the entry of the certificate of default against Ecree will do nothing to prohibit or prejudice Commisimpex from seeking relief to enforce the District of Columbia judgments it holds against ROC – an action that Ecree was neither involved in nor a party to. Commisimpex's efforts in this proceeding will not be prejudiced by granting the Ecree's motion to vacate.

Commisimpex will not be prejudiced by litigating this matter on the merits. By litigating the merits of the case, which is the favored course of action in the Second Circuit, Commisimpex

7

will have the opportunity to attempt to provide evidence to show that the allegations in the Petition are more than complete fabrication. Litigating this matter on the merits further avoids prejudice to Commisimpex as it provides the most expeditious and efficient way of resolving the allegations contained in the Petition.

### C. Ecree LLC has Meritorious Defenses

To satisfy the final prong of the "good cause" test, a meritorious defense must be presented. See Enron Oil Corp., 10 F.3d at 96. Whether or not a defense is sufficiently meritorious to show good cause "is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." Id. at 98. A meritorious defense is one that presents "a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a 'serious question' as to the validity of those allegations." Johnson, 324 F.R.D. at 72 (quoting FedEx TechConnect, Inc. v. OTI, Inc., 2013 WL 5405699, at *8 (S.D.N.Y. Sept. 23, 2013)).

Nevertheless, this is a "low threshold" to meet. Johnson, 324 F.R.D. at 72 (citing Gench v. HostGator.com LLC, 2015 WL 3757120, at *5 (S.D.N.Y. June 17, 2015)).

Commisimpex alleges in the Petition that ROC's ruling family "illegally and fraudulently transferred" funds from the ROC to purchase the Condominium. Pet. ¶ 13. Commisimpex then alleges that ROC transferred these funds "through a series of sham transactions" prior to purchasing the Condominium. Pet. ¶ 13.

Commisimpex's allegations are based almost entirely upon the article published by Global Witness, meaning that the allegations in the Petition are speculation, innuendo, and rank hearsay. At a minimum, the allegations would not comprise admissible evidence at trial.

8

Global Witness is a political activist organization that has not been immune to controversy.  The U.S. District Court for the District of Columbia recently determined that Global Witness made a defamatory statement in an article it published regarding bribery accusations against a former Liberian official and the CEO of Liberia's national oil company.  Tah v. Glob. Witness Publ'g, Inc., 2019 WL 4737116, at *7–8 (D.D.C. Sept. 27, 2019).  In that case, the Court detailed how in its article, Global Witness used headlines, pictures, charts, linguistic techniques, innuendo, and organizational structure to lead readers to its intended conclusion concerning bribery.  Tah, 2019 WL 4737116, at **5-6.  The Court highlighted the unreliability of the Global Witness article, cautioning that Global Witness's brief concession that it had "no evidence" of certain bribes did nothing to "negate the inference" of bribes that the rest of the article was manufactured to show.  Tah, 2019 WL 4737116, at *6.  The Court was entirely unpersuaded by Global Witness's inclusion of these clever tactics in its article and denounced the use of these tactics, stating: "Global Witness is clearly doing more than 'just asking questions' when it calls for an official investigation by governmental bodies; it reasonably implies that there is evidence to justify an investigation of criminal liability, and thereby potential criminal liability itself. Further, capping the Report with a question only protects the question, not the other statements that imply bribery." Tah, 2019 WL 4737116, at *6.  The Tah Court's analysis underscores that the accusations contained in the Global Witness article at issue here are completely unreliable as they similarly lack a shred of evidence.

The article, even if considered as something beyond muckraking, makes no attempt to assert how the funds were the product of money laundering rather than work performed for legitimate infrastructure contracts, other than speculating based upon yet other uncorroborated sources that the contracts for the projects completed by Asperbras were "inflated."

9

The Court is respectfully referred to the motion papers filed by ROC.  ECF Nos. 34-35, 46.  Importantly, if the funds that Commisimpex alleges ROC to have used were not the product of money laundering and were not used for the purchase of the Condominium, then, similarly, the funds received by Mr. Veiga cannot be considered to be illegally obtained funds.

As a result of this article, authorities in Portugal began a criminal investigation of Mr. Veiga regarding his businesses and contracts made between entities he controlled and ROC.  Decl. Rogerio Alves in Supp. Mot. Vacate Cert. Default J. ¶ 8 ("Alves Decl.").  However, despite the allegations contained in the Global Witness article and despite conducting a years-long investigation into Mr. Veiga and his companies, to date, the Portuguese authorities have not brought any charges.  Alves Decl. ¶ 9.

Mr. Veiga, on behalf of Ecree, has instead long maintained his position that Ecree is the lawful owner of the Condominium.  Veiga Decl. ¶ 2, 6-10.  In its own article, Global Witness cites a 2017 interview with Portuguese investigative journalist Micael Pereira, in which Mr. Veiga confirmed his ownership of the Condominium by stating: "[t]he apartment in question is owned by a company of which I am the shareholder.  The acquisition made by this company was financed by my own means, in a business that has nothing to do with third parties, namely the family of the President of Congo."  ECF No. 34, Ex. 6 at p. 6.  Three years later, Mr. Veiga's position has not changed. Veiga Decl. ¶ 2, 6-10.

As K&L Gates was retained to facilitate the purchase of the Condominium, it would have had to conduct at least some due diligence in compliance with state and federal anti-money laundering regulations prior to closing on the Condominium.  We refer the Court to the Declaration of Michael Sullivan in which Mr. Sullivan stated that an attorney for K&L Gates informed him that K&L Gates conducted due diligence for Ecree's purchase of the

Condominium and found nothing improper about the source of funds. ECF No. 35. The due diligence also did not reveal "any involvement by ROC." ECF No. 35. Commisimpex's contention that the funds used to purchase the Condominium were the result of fraud completely contradicts the compliance and due diligence that K&L Gates conducted prior to closing on the Condominium.

Documentation regarding the funds used to purchase the Condominium can be adduced during discovery to establish that Ecree is the lawful owner of the Condominium. Prior to closing on the Condominium, Sebrit Limited, a Cypriot company that Mr. Veiga is the sole Director of, transferred the funds necessary for Ecree to purchase the Condominium. Veiga Decl. ¶ 6. To fund the purchase of the Condominium, Sebrit Limited sent two wire transfers: one directly to the seller of the Condominium for a deposit, and the other to K&L Gates for the remainder of the purchase price. Veiga Decl. ¶ 7. Using the funds sent by Sebrit Limited, K&L Gates then paid the remainder of the purchase price and associated fees to facilitate the closing of the Condominium. Veiga Decl. ¶ 7. The funds sent by Sebrit Limited were not the product of money laundering or fraudulent transfers because the funds were derived from legitimate business activities. Veiga Decl. ¶ 8. Even if this Court were to take Commisimpex's fabricated allegations in the Petition as true, Commisimpex's Petition is nevertheless facially defective. Commisimpex initiated this proceeding seeking to turn over real property – the Condominium – pursuant to New York Civil Practice Law and Rules ("CPLR") Section 5225(b). Pet. ¶ 1. Commisimpex specifically states that this proceeding concerns real property as it "affects title to, and the possession, use or enjoyment of, real property" under New York law. Pet. ¶ 1. CPLR Section 5225(b), however, does not apply to real property. To the contrary, CPLR Section 5225(b) applies to "money or other personal property in which the judgment debtor has an

interest" and provides that a judgment creditor can execute upon money or other personal property that belongs to a judgment debtor but is in the possession of a third party. Because Commisimpex brought this proceeding under CPLR Section 5225(b), which clearly does not apply to the instant matter, Ecree has a meritorious defense and the Court should vacate the entry of default judgment against Ecree.

Ecree therefore has meritorious defenses and the entry of default judgment against Ecree should be vacated to allow for Ecree to appear, and to allow this Court to adjudicate the matter on the merits.

## CONCLUSION

For the foregoing reasons, Ecree's motion to vacate should be granted in its entirety.

Date:  February 21, 2020                                   Respectfully Submitted,

/s/ Daniel A. Schnapp
Daniel A. Schnapp
55 West 46th Street
New York, NY 10036
(212) 940-3000
dschnapp@nixonpeabody.com