UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMISSIONS IMPORT EXPORT S.A.,<br><br>                        Petitioner,<br><br>       v.<br><br>REPUBLIC OF THE CONGO and<br>ECREE LLC,<br><br>                Respondents. | 19-mc-00195-KPF |

### RESPONDENT REPUBLIC OF THE CONGO'S RESPONSE TO PETITIONER'S APPLICATION FOR ATTORNEYS' FEES

/s/ Michael J. Sullivan
Michael J. Sullivan (*pro hac vice*)
/s/ Kimberly P. West
Kimberly P. West (*pro hac vice*)
Ashcroft Law Firm, LLC
200 State Street, 7th Floor
Boston, MA 02109
(P) 617-573-9400
(F) 617-933-7607
MSullivan@AshcroftLawFirm.com
KWest@AshcroftLawFirm.com

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ................................................................................................ **4**

**BACKGROUND** ..................................................................................................................... **4**

**ARGUMENT** ........................................................................................................................... **5**

   **1.**   **The Court Should Reject Petitioner's Request for Fees Incurred Only as a Result of Petitioner's Own Presumptions and Impatience.** ............................................ **6**

   **2.**   **The Court Should Exclude Petitioner's Request for Fees Incurred in Opposing the Republic's Motion for Vacatur.** ........................................................................ **7**

   **3.**   **Fees Incurred in Petitioner's January 14, 2010 Motion to Amend/Correct Judgment Should Not Be Included.** ................................................................................ **8**

   **4.**   **Petitioner Made No Effort to Contact the Republic Prior to Submitting Its Application for Fees.** ..................................................................................... **9**

   **5.**   **Petitioner's Assertions of Prejudice Rest on Rank Speculation and Conspiracy Theories Regarding "Procedural Collusion" That Should Be Disregarded** ...................... **9**

   **6.**   **Reimbursement of Fees Should Be Allocated Primarily to Ecree, as the Only Respondent Making Any Claim to the Property at Issue.** ................................... **11**

   **7.**   **Petitioner's Request for Fees Incurred in Preparing the Fee Application Should Be Denied.** ............................................................................................................ **11**

**CONCLUSION** ...................................................................................................................... **12**

## Cases

*Davis v. City of New Rochelle*,
 156 F.R.D. 549, 553 (S.D.N.Y. 1994) ..................................................................... 11

*Gagne v. Maher*,
 594 F.2d 336, 338 (2d Cir. 1979), *aff'd*, 448 U.S. 122 (1980) .................................. 11

*Holzman Fabian Diamonds Ltd. v. R & E Diamonds LLC*,
 No. 17-CV-9489 (AJN), 2019 WL 1099944, (S.D.N.Y. Mar. 8, 2019) ................................. 10

*Luessenhop v. Clinton Cty., N.Y.*,
 324 F. App'x 125, 126–27 (2d Cir. 2009) ................................................................ 8

*Nat. Organics, Inc. v. TRC Nutritional Labs., Inc.*,
 No. CIV.A. 08-3644, 2009 WL 2957816,  (E.D.N.Y. Sept. 10, 2009) ...................................... 8

*Puddu, et al. v. 6D Global Technologies, Inc, et al.*,
 No. 15-CV-8061 (AJN), 2020 WL 2833852, (S.D.N.Y. May 31, 2020) ............................... 10

*Thor 725 8th Ave. LLC v. Goonetilleke*,
 No. 14 CIV. 4968 (PAE), 2015 WL 8784211 (S.D.N.Y. Dec. 15, 2015),
 *aff'd*, 675 F. App'x 31 (2d Cir. 2017) ................................................................... 11

## Rules

Fed. R. Civ. P. 55(c) ................................................................................... 5

Respondent Republic of the Congo (the "Republic") respectfully submits this Response to Application for Attorneys' Fees by Petitioner Commissions Import Export S.A. ("Petitioner").

## PRELIMINARY STATEMENT

The Republic opposes the application for over $80,000.00 in attorneys' fees stemming from the vacatur of the certificate of default in this matter for the reasons stated below. As an initial matter, the Republic observes that most of Petitioner's requested attorneys' fees are self-inflicted and/or unrelated to the certificate of default. After all, Petitioner chose to oppose vacatur of the certificate of default at every juncture, relying on ultimately unpersuasive legal arguments, and now Petitioner introduces a baseless and unsupported theory of improper coordination between Ecree, LLC ("Ecree") and the Republic. There is no evidence—as this Court found—of bad faith by the Republic. In fact, as it consistently has represented to this Court, the Republic is an innocent third party, interested only in protecting its reputation and having no financial interest in the property at issue in this case. Under these circumstances, requiring the Republic to fund Petitioner's lawsuit and attorneys' fees as a pre-condition to protecting its reputational interest—and moreover, funding Petitioner's strategic decisions to file premature motions to press its own self-serving interests without regard to the evidence—is unreasonable and should be denied or, at a minimum, substantially limited in the manner discussed below.

## BACKGROUND

In its May 11, 2020 Order (the "May 11 Order") the Court determined that the three factors considered in applying Federal Rule of Civil Procedure 55(c) support vacatur of the Clerk's Certificate of Default against the Republic filed August 26, 2019. (Dkt. #12). Specifically, the Court found that "there is no indication that Respondents acted with bad faith or

willfulness" and that "Respondents have adequately demonstrated that a meritorious defense is available to them." May 11 Order at 3–4. The Court noted that "Petitioner may suffer some prejudice as a result of the vacatur of the certificates of default" but concluded that "on balance, the three Rule 55(c) factors support vacatur." May 11 Order at 6.

While the Republic's motion, on its own terms, satisfied Rule 55(c)'s requirements for vacatur, the Court nevertheless concluded that "in light of the prejudice that Petitioner would suffer from the vacatur of the certificates of default, it is appropriate to impose as a condition of the vacatur that Respondents reimburse Petitioner its reasonable attorneys' fees and costs incurred as a result of the default." May 11 Order at 6. The Court's May 11 Order reiterates several of Petitioner's allegations in "recogniz[ing] that Petitioner may suffer some prejudice" as a result of vacatur, but the Order does not specify the particular scenario by which such potential prejudice might arise. May 11 Order at 6.

Finally, the Court's Order contemplated the prospect of the parties "seeking an amicable resolution in connection with the payment of fees" in advance of Petitioner's filing of its application for attorneys' fees on May 27, 2020. May 11 Order at 7.

## **ARGUMENT**

While the Republic in no way disputes the Court's inherent power to impose a reasonable condition on the vacatur, Petitioner's application seeks fees in an amount that should be substantially reduced and should be expressly predicated on non-speculative, non-conspiratorial concerns of potential prejudice related solely to the default, as specifically indicated in the Court's May 11 Order.

1. **The Court Should Reject Petitioner's Request for Fees Incurred Only as a Result of Petitioner's Own Presumptions and Impatience.**

The Court's May 11 Order limits reimbursement to "reasonable attorneys' fees and costs incurred *as a result of the default*." May 11 Order at 6 (emphasis added). However, many of the fees sought in Petitioner's application were not incurred as a result of the default, but rather as a result of Petitioner's own presumptions and impatience. For example, after Petitioner filed its Proposed Clerk's Certificates of Default on August 7, 2019 (Dkt. ##8-10), it next decided that "based on prior experience in this Court, [Petitioner] considered the appropriate next step to be to move by Order to Show Cause for a default judgment once the Clerk entered the defaults" and "[a]ccordingly, starting on August 8 [Petitioner] commenced drafting the Declaration and Memorandum of Law in support of that Order to Show Cause." *See* Declaration of Charles R. Jacob dated May 27, 2020 ("Jacob Decl.") ¶ 15, Ex. 1.[1] As such, the legal fees invoiced between August 7 and August 27 were incurred based on Petitioner's assumptions and guesswork, not as a result of the default. Accordingly, the 6.3 hours ($5,008.50) invoiced by Jacob, the 2.1 hours ($987.00) invoiced by Sukholitsky, and the 1.15 hours invoiced by Walford ($316.25) during the period of August 7-27, 2019—a total of **$6,311.75**—should be excluded from any reimbursement.

The Court entered Petitioner's proposed Clerk's Certificate of Default on August 26, 2019 (Dkt. #12), and the following day, August 27, the Court issued an order stating that it was not yet prepared to order that the property in question be turned over to Petitioner and ordered the parties to appear "at a conference to discuss turnover proceedings under New York law, to be held October 9, 2019." (Dkt. #13). At this point, the reasonable course of action for Petitioner was to wait until October 9 to appear for the conference.

---

[1] Petitioner's attached invoice indicate that it began drafting the "Jacob declaration in support of default judgment and related relief" on August 7, 2019. *Compare* Jacob Decl. ¶ 15 *with* Jacob Decl. Ex. 1 entry for 08/07/19.

Instead, Petitioner disregarded the Court's admonition that a decision on turnover of the property was premature, and on August 29 filed a proposed Order to Show Cause and supporting papers on August 29 "*[i]n the belief that the Court might wish to consider* the proposed Order to Show Cause before or in connection with the October 9 conference."   Jacob Decl. ¶ 16 (emphasis added).   In the process, during August 28 and 29, Jacob invoiced another 3.5 hours ($2,782.50), Sukholistky another 3.45 hours ($1,621.50), and Walford another 6.5 hours ($1,787.50) based on the mere "*belief*" that the Court "*might* wish to consider" Petitioner's proposed order prior to the October 9 conference.   The **$6,191.50** incurred in fees during August 28-29, 2019 are not the result of the default and should not be included in any reimbursable sums determined by the Court.

### 2.   The Court Should Exclude Petitioner's Request for Fees Incurred in Opposing the Republic's Motion for Vacatur.

Following the parties' appearance before the Court on December 16, 2019, the Court on December 23 issued an order setting a schedule for the Republic's anticipated motion to vacate the Clerk's Certificate of Default. (Dkt. #33).   Over the course of January and February, Petitioner invoiced $60,528.50 in legal fees that were not "incurred as a result of the default," but rather were incurred in opposing the Respondents' motions to vacate said default.   The difference is not merely one of semantics, as Petitioner could have chosen to not oppose the Respondents' motions to vacate, saved the legal fees incurred in an unsuccessful opposition effort, and would have ultimately been in substantially the same position it currently occupies, *i.e.*, having the opportunity to litigate its case on the merits to the best of its ability.   Petitioner's labor-intensive opposition to the Respondents' motions to vacate—a tactical decision only it was in a position to make—had dim prospects at the outset.   That Petitioner incurred $60,528.50 in

legal fees in what proved to be an unsuccessful effort is the kind of wager often made in litigation and was not the required result of the default. Accordingly, the Court should deny reimbursement of the **$60,528.50** in fees incurred in opposing Respondents' motions for vacatur in January and February 2020. *See Nat. Organics, Inc. v. TRC Nutritional Labs., Inc.*, No. CIV.A. 08-3644, 2009 WL 2957816, at *2 (E.D.N.Y. Sept. 10, 2009) (Defendant's obligation to reimburse fees did not extend to all of the proceedings that arose after the default at issue, but only those directly resulting from default).

### 3. Fees Incurred in Petitioner's January 14, 2010 Motion to Amend/Correct Judgment Should Not Be Included.

While none of Petitioner's requested fees incurred in January 2020 are the result of the default, even more far afield are its fees incurred in preparing a motion to Amend/Correct Judgment on January 14, 2020 (Dkt. ##38-41)—a motion Petitioner describes as seeking "ancillary relief" in entries for January 6, 8, 13, 14 of the invoices it submitted. *See* Jacob Decl. ¶ 29 Ex. 6. The invoice entries for those dates does not specify which fees were specifically incurred in pursuit of "ancillary relief," but the 10.9 hours block-billed entries by Jacob ($9,156) and the 5.2 hours by Sukholitsky ($2,756) constitute a combined **$11,912** of legal fees from which "ancillary relief" should be excluded in any reimbursement.

Further, the "ancillary relief" was wholly extraneous to Petitioner's response to the default (and likely ill-advised, given court's January 28 *sua sponte* order for Petitioner to show cause as to why its requests were not filed in the District of Columbia (Dkt. #49)). Petitioner's choice to prepare and file its January 14 motion cannot be said to have resulted directly from the default at issue. As such, Respondents should not be responsible for the fees incurred by Petitioner in connection with the January 14 motion. *See Luessenhop v. Clinton Cty., N.Y.*, 324

F. App'x 125, 126–27 (2d Cir. 2009) ("A district court should reduce the number of hours included in the fee calculation if the claimed time is excessive, redundant, or otherwise unnecessary." (internal quotes omitted)).

**4.   Petitioner Made No Effort to Contact the Republic Prior to Submitting Its Application for Fees.**

The Court's May 11 Order includes a clear invitation for the parties to attempt to reach an agreement on the payment of fees and possibly obviate the need for further motion practice on the issue: "Nothing in this Order prevents the parties from seeking an amicable resolution in connection with the payment of fees.  If the parties reach such a resolution, they are directed to file a joint letter, no later than May 27, 2020, advising the Court of same."  May 11 Order at 7. However, Petitioner made no effort to contact the Republic before filing its application on May 27, and in so doing ensured that this proceeding would grow costlier in terms of time and resources spent by the parties and the Court.

**5.   Petitioner's Assertions of Prejudice Rest on Rank Speculation and Conspiracy Theories Regarding "Procedural Collusion" That Should Be Disregarded.**

The Court's May 11 Order recognizes only Petitioner's previously alleged concerns regarding prejudice resulting from "a foreclosure proceeding has been initiated against the property in question" and Petitioner's belief that "Respondents will not cooperate with discovery." May 11 Order at 5–6.  In its application for fees, however, Petitioner introduces a new threat of prejudice based on a conspiracy theory of "procedural collusion between Respondents."  And in a display of conjecture-driven logic that rivals the campaigners at Global Witness, Petitioner describes the emergence of a sinister strategy of collusion evidenced "by the timing of Ecree's appearance in this proceeding until the same day that the Republic filed its

Reply in support of its motion to vacate its default – the last day of briefing on that motion." Petitioner's Memorandum of Law in Support of Application for Attorneys' Fees ("Petitioner's Memorandum") (Dkt. #68 at 6).

Petitioner's conspiracy theory is then extended to include a series of hypothetical events by which Respondents' might accomplish their collusive scheme: "Petitioner is therefore justifiably concerned that Ecree might pay the relatively modest amount of fees resulting from the 80/20 allocation discussed above, while the Republic will ignore any payment order and allow a default as a procedural matter, yet remain collusively involved behind Ecree as the real party in interest." Petitioner's Memorandum at 7. While perhaps apropos its original hearsay-riddled petition, Petitioner's inclusion of such speculation and conspiratorial suspicions is unwarranted, particularly in light of the Republic's steadfast indifference to the eventual disposition of the 32G condo, so long as its reputation is not further besmirched in the process.

Irrespective of the precise contours of the Court's decision on the instant-fees application, the Court should reject Petitioner's attempt to legitimize claims of potential prejudice based on sheer conjecture. *Puddu, et al. v. 6D Global Technologies, Inc, et al.*, No. 15-CV-8061 (AJN), 2020 WL 2833852, at *2 and *5 (S.D.N.Y. May 31, 2020) (observing that "[t]he prejudice Plaintiffs assert is based, almost entirely, on pure speculation" and requiring the parties to confer and attempt to reach a resolution on reasonable attorneys' fees prior to filing of fees application); *Holzman Fabian Diamonds Ltd. v. R & E Diamonds LLC*, No. 17-CV-9489 (AJN), 2019 WL 1099944, at *2 (S.D.N.Y. Mar. 8, 2019) (Plaintiff's unsubstantiated concerns about diversion of funds do not rise to the level of prejudice). Any award should be narrowly construed to extend only to fees associated with rational, reasonable, and supportable claims of prejudice.

**6.   Reimbursement of Fees Should Be Allocated Primarily to Ecree, as the Only Respondent Making Any Claim to the Property at Issue.**

Notwithstanding Petitioner's unsupported conspiracy theories, there is a sound basis to make Ecree primarily responsible for any reimbursement responsibility with respect to Petitioner's fee application.   In contrast to the Republic—who disavows any interest in the property at issue—Ecree is claiming to be the rightful and legal owner of the 32G condo and will be the primary financial beneficiary of vacatur.   Accordingly, a 60/40 ratio is an appropriate allocation for calculating Ecree's larger responsibility for any reimbursement of attorneys' fees by Respondents.

**7.   Petitioner's Request for Fees Incurred in Preparing the Fee Application Should Be Denied.**

There is no basis for awarding Petitioner the $5,480.00 in fees it seeks for the instant fee application ("fees on fees") for two reasons.   First, as a matter of procedure and equity, as discussed above, Petitioner failed to contact the Republic per the Court's Order prior to drafting and submitting its fee application.   It therefore should be barred from seeking its costs.   Second, as a substantive matter, Petitioner is not entitled to them.   The cases cited in support of its position are wholly inapposite because they involve fee-shifting statutes that are intended to further particular public policy considerations not present here.   In *Gagne v. Maher* the court's analysis and decision was focused entirely on the Civil Rights Attorney's Fees Awards Act of 1976.   *Gange v. Maher*, 594 F.2d 336, 338 (2d Cir. 1979), *aff'd*, 448 U.S. 122 (1980).   Similarly, in *Davis v. City of New Rochelle*, the court's analysis concerned the fee-shifting provisions of the Voting Rights Act.   *Davis v. City of New Rochelle*, 156 F.R.D. 549, 553 (S.D.N.Y. 1994).

*Gagne* and *Davis* are not applicable here, nor is there another basis for awarding the reimbursement of "fees on fees."   *See Thor 725 8th Ave. LLC v. Goonetilleke*, No. 14 CIV. 4968

(PAE), 2015 WL 8784211, at *13 (S.D.N.Y. Dec. 15, 2015), *aff'd*, 675 F. App'x 31 (2d Cir. 2017) (distinguishing cases involving a right to attorneys' fees created by statute and excluding from the fee award all fees incurred in connection with the fee application) .

## **CONCLUSION**

For the foregoing reasons, the amount of reimbursable fees sought by Petitioner should be reduced as follows:

| Description | Amount | Reason for Exclusion |
|---|---|---|
| Time entries for August 7-27, 2019 involving fees incurred in preparing order to show cause | **$6,311.75** | Fees were incurred based on Petitioner's assumptions and guesswork, not as a result of the default. |
| Time entries for August 28-29, 2019, incurred after Court's August 27 Order setting a conference for October 9, 2019 | **$6,191.50** | Fees were incurred "*[i]n the belief that the Court might wish to consider* the proposed Order to Show Cause before or in connection with the October 9 conference" are the result of Petitioner's speculation and not the default. |
| Fees incurred in opposing Respondents' motions for vacatur in January and February 2020 | **$60,528.50** | Fees incurred were the result of Petitioner's labor-intensive opposition to the Respondents' motions to vacate—an effort with dim prospects that proved to be an unsuccessful wager—not the result of the default. |
| Block-billed time entries for Jan 6, 8, 13 and 14 for fees incurred in pursuit of "ancillary relief" | **$11,912.00** [a subset of the above] | Fee incurred in pursuit of "ancillary relief" were wholly extraneous to Petitioner's response to the default. |
| Fees incurred in preparing application for attorneys' fees | **$5,480.00** | There is no basis for an award of "fees on fees"; the cases cited by Petitioner involve fee-shifting statutes and policies that are absent here. |

In addition, any reimbursable fees should be expressly predicated on non-speculative concerns of potential prejudice related solely to the default, as specifically indicated by the Court's May 11 Order. Finally, any award should then be allocated on a 60%/40% basis between Ecree/the Republic.

Date:  June 10, 2020                    Respectfully Submitted,

                                         /s/ Michael J. Sullivan
                                         Michael J. Sullivan (*pro hac vice*)
                                         /s/ Kimberly P. West
                                         Kimberly P. West (*pro hac vice*)
                                         Ashcroft Law Firm, LLC
                                         200 State Street, 7th Floor
                                         Boston, MA 02109
                                         (P) 617-573-9400
                                         (F) 617-933-7607
                                         MSullivan@AshcroftLawFirm.com
                                         KWest@AshcroftLawFirm.com