UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

COMMISSIONS IMPORT EXPORT S.A.,

Petitioner,

-v.-

REPUBLIC OF THE CONGO and ECREE LLC,

Respondents.

---

19 Misc. 195 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

On this motion for attorneys' fees, the Court presumes a measure of familiarity with the procedural history of this case. Petitioner initiated this proceeding on April 15, 2019, with a petition for turnover pursuant to New York Civil Practice Law and Rules ("CPLR") §§ 5201(b), 5225(b), 5236, and 5239, and Federal Rule of Civil Procedure 69, regarding a Manhattan condominium unit (the "Condominium"). (Dkt. #1). In broad summary, Petitioner contended that Respondent (and Judgment Debtor) Republic of the Congo (the "Republic") held an undisclosed interest in the Condominium, and that Respondent Ecree LLC ("Ecree") had been the fraudulent transferee of the same. (*Id.*).

On August 26, 2019, the Clerk of Court issued certificates of default as to both Respondents after neither party responded to the petition for turnover. (Dkt. #11, 12). On August 27, 2019, this Court entered an Order clarifying that "[a]fter reading Plaintiff's submissions, the Court is not yet prepared to order that the property in question be turned over to Plaintiff," and scheduling a conference to discuss turnover proceedings under New York law on

October 9, 2019.  (Dkt. #13).  Two days later, on August 29, 2019, Petitioner filed an extensive submission in support of an order to show cause why default judgment should not be entered.  (*See* Dkt. #14-21).  The Court denied Petitioner's application to convert the October 9 conference into a show-cause hearing.  (Dkt. #22).

In late September and early October 2019, counsel for the Republic entered notices of appearance.  (*See* Dkt. #25, 29).  On the Republic's motion, the Court adjourned the conference scheduled for October 9, 2019, until December 16, 2019.  (Dkt. #30).  At this conference, the Republic requested leave to move to vacate the certificate of default issued against it.  (Dkt. #33).  The Court granted the Republic leave to file a motion to vacate the certificate of default on December 23, 2019.  (*Id.*).  Thereafter, on January 24, 2020, counsel for Ecree appeared in this proceeding.  (Dkt. #45).  Ecree likewise sought leave to move to vacate the certificate of default issued against it.  (Dkt. #47).  On February 12, 2020, the Court granted Ecree leave to file such a motion.  (Dkt. #53).

In an Order issued on May 11, 2020, the Court granted Respondents' motions to vacate the certificates of default entered as to each, conditioned on Respondents' payment of the "reasonable attorneys' fees incurred as a result of the default."  (Dkt. #65 at 7; *see also id.* at 6 (citing as support *Filo Promotions, Inc.* v. *Bathtub Gins, Inc.*, 311 F. Supp. 3d 645, 647-48 (S.D.N.Y. 2018), and *Nat. Organics, Inc.* v. *TRC Nutritional Labs., Inc.*, No. 08 Civ. 3644 (DRH), 2009

WL 2957816, at *2 (E.D.N.Y. Sept. 10, 2009))).[1]  The Court has received Petitioner's fee petition materials (Dkt. #66-68, 71), as well as Respondents' opposition submissions (Dkt. #69-70).  It now resolves Petitioner's motion.

## DISCUSSION

### A.    Applicable Law

The Second Circuit has held that, "[i]n determining whether to exercise its discretion to set aside a default, a district court has inherent power to impose a reasonable condition on the vacatur in order to avoid undue prejudice to the opposing party." *Powerserve Int'l* v. *Lavi*, 239 F.3d 508, 515 (2d Cir. 2001) (citation omitted).  As a sister court in this District has observed, "[o]ne such condition that is routinely imposed is the requirement that the defaulting party reimburse the plaintiff its reasonable attorneys' fees and costs incurred as a result of the default." *Filo Promotions, Inc.*, 311 F. Supp. 3d at 647 (collecting cases).

Attorneys' fees are awarded by determining the "presumptively reasonable fee," often referred to as the "lodestar." *Millea* v. *Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)); *see also Perdue* v. *Kenny A. ex rel. Winn*, 559 U.S. 542, 552-53 (2010).  This fee is calculated by multiplying the "reasonable hourly rate and the reasonable number of hours required by the case." *Millea*, 658 F.3d at 166.  Courts may,

---

[1]     The Court invited the parties to discuss resolving the fees issue without additional litigation, but understands that no such discussions took place.  (*See* Dkt. #65 at 7).

only after the initial calculation of the presumptively reasonable fee, adjust the total when it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Lilly* v. *City of New York*, 934 F.3d 222, 230 (2d Cir. 2019) (citing *Millea*, 658 F.3d at 167). In short, a district court exercises considerable discretion in awarding attorneys' fees. *See Millea*, 658 F.3d at 166; *see also Arbor Hill*, 522 F.3d at 190.

When evaluating reasonable hourly rates, courts look at "the rate a paying client would be willing to pay," and take into account "all case-specific variables." *Arbor Hill*, 522 F.3d at 189-90. It is well-settled that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," and that "such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." *Id.* The Second Circuit's "forum rule" also requires courts to "generally use 'the hourly rates employed in the district in which the reviewing court sits' in calculating the presumptively reasonable fee." *Simmons* v. *N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill,* 493 F.3d at 119); *see also Miroglio S.P.A.* v. *Conway Stores, Inc.*, 629 F. Supp. 2d 307, 314 (S.D.N.Y. 2009). Finally, courts in this District have recognized that an "attorney's customary billing rate for fee-paying clients is ordinarily the best evidence of" a reasonable hourly rate. *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ. 962 (RCC), 2006 WL 3498590, at *9 (S.D.N.Y. Dec. 4, 2006).

4

When evaluating the number of hours, a court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  *Haley* v. *Pataki*, 106 F.3d 478, 484 (2d Cir. 1997) (internal quotation marks and citation omitted).  In addition, a court should examine the hours expended by counsel with a view to the value of the work product to the client's case.  *See Lunday* v. *City of Albany*, 42 F.3d 131, 133 (2d Cir. 1994) (per curiam).  A court is to exclude "excessive, redundant[,] or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims."  *Quaratino* v. *Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

In determining whether hours are excessive, "the critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'"  *Samms* v. *Abrams*, 198 F. Supp. 3d 311, 322 (S.D.N.Y. 2016) (quoting *Grant* v. *Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).  And where "the billing records are voluminous, it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent."  *Yea Kim* v. *167 Nail Plaza, Inc.*, No. 05 Civ. 8560 (GBD) (GWG), 2009 WL 77876, at *4 (S.D.N.Y. Jan. 12, 2009) (internal quotation marks and citation omitted).  A court also retains the discretion to make across-the-board percentage reductions to exclude unreasonable hours, colloquially referred to as "trimming the fat."  *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987); *E.S.* v. *Katonah-Lewisboro Sch. Dist.*,

796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011), *aff'd sub nom. E.S. ex rel. B.S.* v. *Katonah-Lewisboro Sch. Dist.*, 487 F. App'x 619 (2d Cir. 2012) (summary order).

A court also looks at the nature of the legal matter and context of the fee award in considering what is a reasonable rate and reasonable time spent on a matter. *Figueroa* v. *W.M. Barr & Co., Inc.*, No. 18 Civ. 11187 (JGK) (KHP), 2020 WL 2319129, at *3 (S.D.N.Y. May 11, 2020).  The Second Circuit has suggested that courts should consider factors including, but not limited to, "the experience, reputation, and ability of the attorneys," and "awards in similar cases" in making this determination.  *Arbor Hill*, 522 F.3d at 186 n.3 (citing the 12 factors enumerated in *Johnson* v. *Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard* v. *Bergeron*, 489 U.S. 87, 109 (1989)).  More broadly a court may consider "the purpose of the award; that is, a different presumptively reasonable fee may be warranted if the fee is being awarded as a sanction for misconduct than if the fee is being awarded in connection with a successful outcome in a statutory fee-shifting case." *Figueroa*, 2020 WL 2319129, at *3.[2]

---

[2]     The twelve factors enumerated in *Johnson* are (i) the time and labor required; (ii) the novelty and difficulty of the questions; (iii) the level of skill required to perform the legal service properly; (iv) the preclusion of employment by the attorney due to acceptance of the case; (v) the attorney's customary hourly rate; (vi) whether the fee is fixed or contingent; (vii) the time limitations imposed by the client or the circumstances; (viii) the amount involved in the case and results obtained; (ix) the experience, reputation, and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008) (citing *Johnson* v. *Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard* v. *Bergeron*, 489 U.S. 87 (1989)).

**B.      The Court Grants in Part Petitioner's Motion for Attorneys' Fees**

**1.      Determining Reasonable Hourly Rates**

Petitioner seeks fees incurred by four legal professionals from the law firm of Goulston & Storrs PC ("G&S") during the period from August 2019 to February 2020.  In total, Petitioner "requests reimbursement of $51,750.00 from the Republic, and $26,542.50 from Ecree, in legal fees that Petitioner has incurred and paid as a result of Respondents' defaults," as well as $5,480.00 in fees incurred in filing the instant motion.  (Dkt. #68 at 1).[3]  Alternatively, Petitioner requests that the fees be split evenly between the two Respondents. (*Id.*).

On the specific issue of reasonable hourly rates, G&S seeks rates of $795 and $840 for partner Charles Jacob, who has 43 years of experience; $470 and $530 for associate Isabel Sukholitsky, who has seven years of experience; $950 for counsel Joel Miller, who has 54 years of experience; and $275 and $290 for paralegal Tresann Walford, whose work experience is not detailed.  (Dkt. #67 at 3).[4]  Counsel emphasizes that "the great majority of the work was performed by [Mr. Jacob] and Ms. Sukholitsky."  (*Id.* at 2).

The Court has written and reviewed numerous attorneys' fees decisions over the years, and it recognizes that there has not been perfect consistency in

---

[3]      Petitioner advises that it does not seek reimbursement for the "*de minimis*" costs that were incurred.  (Dkt. #68 at 2 n.1).

[4]      Petitioner advises that G&S raised their rates in October 2019.  (Dkt. #67 at 3).  While the Court recognizes the reality of periodic increases in attorney billing rates, it has for administrative convenience determined a single hourly rate for each legal professional in this case.  Also for administrative convenience, the Court has imposed any

assessing the reasonableness of attorneys' rates.  *See, e.g., Tessemae's LLC* v. *Atlantis Cap. LLC*, No. 18 Civ. 4902 (KHP), 2019 WL 2635956, at *4 (S.D.N.Y. June 27, 2019) ("Courts in this District have determined that hourly rates ranging from $250 to $1,260 per hour, for attorneys' work on a commercial litigation matter, were reasonable.").  In setting reasonable rates in this case, the Court has focused on the expertise of each counsel, both in terms of years in the profession and relevant experience.  The Court also understands that the hourly rates each professional seeks were billed to, and paid by, Petitioner. (*See* Dkt. #67 at 1, 3).  Payment of fees by clients has been recognized by courts as "solid evidence" of their reasonableness in the market, *Bleecker Charles Co.* v. *350 Bleecker St. Apt. Corp.*, 212 F. Supp. 2d 226, 230-31 (S.D.N.Y. 2002), although the Court must still exercise its discretion and look to the prevailing rates within this District.  *See A.V.E.L.A., Inc.* v. *Est. of Monroe*, No. 12 Civ. 4828 (KPF) (JCF), 2014 WL 3610902, at *2 (S.D.N.Y. July 18, 2014) ("[T]he actual billing arrangement is a significant, though not necessarily controlling, factor in determining what fee is 'reasonable.'" (alteration in original) (internal quotation marks omitted) (quoting *Crescent Publ'g Grp., Inc.* v. *Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001))).[5]

---

percentage fee reductions for a particular month equally against all of the legal professionals who billed time for that month.

[5]     The Court accepts, but ascribes less significance to, G&S's implementation of a Client Value Team to monitor the firm's rates as compared to various peer firms.  (Dkt. #67 at 3-4).

In several prior cases in which the party entitled to recover attorneys' fees has actually paid such fees prior to receiving reimbursement, this Court has awarded fees ranging from $600 to $900 for partners; $275 to $525 for associates; and $150 to $200 for paralegals.  *See, e.g.*, *L.E.K. Consulting LLC* v. *Amicus Cap. Partners, LLC*, No. 19 Civ. 10648 (KPF), 2021 WL 4198220, at *5 (S.D.N.Y. Sept. 13, 2021) (breach of contract action); *Carrington* v. *Graden*, No. 18 Civ. 4609 (KPF), 2020 WL 5758916, at *9 (S.D.N.Y. Sept. 28, 2020) (antitrust and employment discrimination action); *Abraham* v. *Leigh*, No. 17 Civ. 5429 (KPF), 2020 WL 5512718, at *7 (S.D.N.Y. Sept. 14, 2020) (breach of contract action), *reconsideration denied*, No. 17 Civ. 5429 (KPF), 2020 WL 5836511 (S.D.N.Y. Oct. 1, 2020); *see also Murray* v. *UBS Sec., LLC*, No. 14 Civ. 927 (KPF), 2020 WL 7384722, at *10 (S.D.N.Y. Dec. 16, 2020) (employment discrimination action brought under Sarbanes-Oxley Act of 2002).  Each of these decisions collects and analyzes numerous comparator decisions from sister courts within this District, and those analyses are incorporated herein by reference; further, the Court's review of more recent decisions in this District does not cause it to reconsider the rates it set in those earlier cases.[6]  It bears noting, however, that each of those cases was more complicated — legally and factually — than this one.  Thus, after considering all of the factors listed earlier in this Opinion, and after comparing the experience and qualifications of the G&S legal professionals with legal professionals in other cases decided by

---

[6]     The Court has also looked for prior decisions in this District awarding fees to Petitioner's counsel and has found none.

this Court, the Court awards rates of $700 for Mr. Jacob, $450 for Ms. Sukholitsky, $800 for Mr. Miller, and $200 for Ms. Walford.

### 2. Determining a Reasonable Number of Hours

The more difficult question concerns assessing the reasonable number of hours "incurred as a result of the default." (Dkt. #65 at 7). G&S attributes 113.95 billable hours to Respondents' default, exclusive of fees incurred in drafting their application. (Dkt. #67-8). Respondents proffer both general and specific challenges to this number (Dkt. #69-70); the Court agrees with several of the general complaints and echoes them here.

To begin, the Court agrees with Respondents that a substantial portion of the hours billed by Mr. Jacob concerned research and drafting projects that could have been performed by a more junior attorney (such as Ms. Sukholitsky), or, worse yet, administrative tasks that could have been performed by a paralegal (such as Ms. Walford). (*See, e.g.*, Dkt. #67-1 (multiple entries for drafting and legal research, as well as allocating time to "organiz[ing] factual and legal materials" for attorney declaration); Dkt. #67-2 ("legal research"); Dkt. #67-3 (drafting opposition to motion to adjourn conference); Dkt. #67-5 (multiple entries for "legal research"); Dkt. #67-6 (multiple entries for drafting and legal research); Dkt. #67-7 (legal research)). As this Court has noted in prior opinions, a reduction in hours may be appropriate to counteract a "top-heavy" distribution of hours among attorneys, *Carrington*, 2020 WL 5758916, at *16, and the Court will implement such a reduction here.

10

Relatedly, the Court will reduce certain hours sought by G&S professionals to account for "block-billing" and indications of duplicative efforts. *See, e.g., Murray*, 2020 WL 7384722, at *21 (reducing for block-billing); *see generally LV* v. *N.Y.C. Dep't of Educ.*, 700 F. Supp. 2d 510, 525 (S.D.N.Y. 2010) ("Block-billing, the practice of aggregating multiple tasks into one billing entry, is not prohibited," but it "can make it exceedingly difficult for courts to assess the reasonableness of the hours billed." (internal quotation marks omitted)); *Siegel* v. *Bloomberg L.P.*, No. 13 Civ. 1351 (DF), 2016 WL 1211849, at *13 (S.D.N.Y. Mar. 22, 2016) ("[C]ourts routinely apply percentage reductions to requested attorneys' fees based on the performance of inefficient, duplicative, or unnecessary work.").

Certain of Respondents' other objections have less traction. For example, the Republic protests that it should not be required to pay fees incurred by Petitioner that were "self-inflicted or unrelated to *the certificate of default*." (Dkt. #69 at 4 (emphasis added); *see also* Dkt. #70 at 2 n.1 (Ecree's suggestion that fees could have been avoided by stipulating to set aside the default)). As the Republic must know, however, the Court's order granted "reasonable attorneys' fees and costs incurred as a result of *the default*." (Dkt. #65 at 7). The Republic's stratagem of recasting the Court's decision is at once unavailing and unappreciated. As discussed *infra*, the Court will reduce certain of Petitioner's requested hours to reflect work that was not warranted by the Court's directives. That said, it was not inappropriate for Petitioner to begin preparing order to show cause paperwork in accordance with the Court's

Individual Rules of Practice in Civil Cases, nor was Petitioner obligated to stipulate to the vacatur of the certificates of default once each Respondent eventually appeared.  While Petitioner did not ultimately succeed in forestalling vacatur, its arguments in opposition were not frivolous.

In assessing the reasonableness of hours billed in prior fee petitions, this Court has alternated between the use of an across-the-board percentage reduction and the disallowance of certain hours billed.  *Compare Gamero* v. *Koodo Sushi Corp.*, 328 F. Supp. 3d 165, 175 (S.D.N.Y. 2018) (disallowing certain time entries billed), *with Marzullo* v. *Karmic Release Ltd.*, No. 17 Civ. 7482 (KPF), 2018 WL 10741649, at *3 (S.D.N.Y. Apr. 24, 2018) (imposing across-the-board reduction of 15%).  Both are acceptable methods of arriving at a reasonable number of hours.  Having carefully considered the hours billed by G&S, the Court has determined to review each month's billings and impose an appropriate percentage reduction.

**August 2019**:  G&S seeks 11.5 hours for Mr. Jacob, 5.55 hours for Ms. Sukholitsky, and 7.40 hours for Ms. Walford.  After reviewing G&S's billing records, the Court reduces that amount by 50%, to account for the top-heavy billing issue described earlier, as well as the substantial amount of time billed to finalizing the order to show cause papers *after* the Court had issued its August 27, 2019 order making clear its disinclination to order turnover of the Condominium.  Accordingly, the Court awards 6.75 hours for Mr. Jacob, 2.78 hours for Ms. Sukholitsky, and 3.70 hours for Ms. Walford for this month.

**September 2019**:  G&S seeks 2.1 hours for Mr. Jacob and 2.0 hours for Ms. Sukholitsky.  After reviewing G&S's billing records, the Court reduces that amount by 25%, to address Mr. Jacob's performance of associate-level tasks at a partner-level billing rate and certain block-billing issues that prevent the Court from knowing whether he and Ms. Sukholitsky engaged in duplicative efforts.  Accordingly, the Court awards 1.58 hours for Mr. Jacob and 1.5 hours for Ms. Sukholitsky for this month.

**October 2019:**  G&S seeks 1.8 hours for Mr. Jacob and 0.5 hours for Ms. Walford.  After reviewing G&S's billing records, the Court reduces that amount by 40% because certain of Mr. Jacob's tasks were more properly done by an associate, and because the Court does not believe that much (if any) time should have been allocated to objecting to the adjournment of the conference. Accordingly, the Court awards 1.08 hours for Mr. Jacob and 0.3 hours for Ms. Walford for this month.

**November 2019:**  G&S seeks 1.3 hours for Mr. Jacob alone for this month.  After reviewing his billing entries, the Court does not impose any reductions to that figure.

**December 2019:**  G&S seeks 10.3 hours for Mr. Jacob, 5.10 hours for Ms. Sukholitsky, and 0.3 hours for Mr. Miller.  After reviewing G&S's billing records, the Court reduces that amount by 40%, because counsel's block-billing does not permit the Court to know the allocation of time to the tasks described in their entries or to rule out the possibility of duplicative efforts, and because Mr. Jacob billed for certain tasks that were better done by an

13

associate.  Accordingly, the Court awards 6.18 hours for Mr. Jacob, 3.06 hours for Ms. Sukholitsky, and 0.18 hours for Mr. Miller for this month.

**January 2020:**  G&S seeks 30.5 hours for Mr. Jacob, 15.4 hours for Ms. Sukholitsky, and 0.6 hours for Ms. Walford.  After reviewing G&S's billing records, the Court reduces that amount by 70%, to address the block-billing and division of labor issues discussed throughout this section, as well as (i) the ultimate lack of success of G&S's opposition to the vacatur motion and (ii) certain billings attributed to applications for "ancillary relief" that exceed the scope of the Court's May 11, 2020 Order.  *Cf. Quaratino*, 166 F.3d at 425 (directing courts to exclude "excessive, redundant[,] or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims"); *Williams* v. *Epic Sec. Corp.*, 368 F. Supp. 3d 651, 656 (S.D.N.Y. 2019) ("Where 'a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount,' even if plaintiff's 'claims were interrelated, nonfrivolous, and raised in good faith.'" (quoting *Hensley* v. *Eckerhart*, 461 U.S. 424, 436 (1983))). Accordingly, the Court awards 9.5 hours for Mr. Jacob, 4.62 hours for Ms. Sukholitsky, and 0.18 hours for Ms. Walford for this month.

**February 2020:**  G&S seeks 9.7 hours for Mr. Jacob, 9.4 hours for Ms. Sukholitsky, and 0.5 hours for Mr. Miller.  After reviewing G&S's billing records, the Court reduces that amount by 40%, to account for the block-billing and division of labor issues discussed earlier in this Opinion.

Accordingly, the Court awards 5.82 hours for Mr. Jacob, 5.64 hours for Ms. Sukholitsky, and 0.3 hours for Mr. Miller for this month.

In total, the Court finds the reasonable number of hours attributable to Respondents' default to be 32.21 hours for Mr. Jacob, 17.6 hours for Ms. Sukholitsky, 0.48 hours for Mr. Miller, and 4.18 hours for Ms. Walford, resulting in an aggregate attorneys' fees figure of $31,687.  Though the parties proffer different ways in which the Court can allocate that figure between Respondents (*see, e.g.*, Dkt. #68 at 6-7; Dkt. #69 at 11), the Court has determined to allocate the fees evenly between the Republic and Ecree, with each responsible for $15,843.50.  The record before the Court does not support Petitioner's current claims of "procedural collusion" between Respondents. (*See* Dkt. #68 at 7).  However, it remains the case that both Respondents were properly served; that neither timely appeared; that each Respondent's failure to receive notice of these proceedings was at least in part attributable to its own failings (*see* Dkt. #65 at 3-4); and, finally, that much of the work undertaken by G&S in connection with Respondents' default was equally applicable to both Respondents.

### 3. The Court Will Not Award "Fees on Fees"

Finally, G&S requests $5,480.00 in fees expended in preparing the instant application.  (*See* Dkt. #67 at 11; *see also id.* (averment of Mr. Jacob that "Ms. Sukholitsky and I have each spent in excess of four hours to date working on this application")).  The Court observes that courts in this Circuit have not been uniform in their allowance of "fees on fees."  *See, e.g., Makinen* v.

15

*City of New York*, No. 11 Civ. 7535 (ALC) (GWG), 2019 WL 970945, at *2 (S.D.N.Y. Feb. 28, 2019) (discussing different approaches). While the Court has awarded such fees in the past, *see, e.g.*, *Murray*, 2020 WL 7384722, at *27, it will not do so here. Of note, the Court invited the parties to "seek[ ] an amicable resolution in connection with the payment of fees." (Dkt. #65 at 7). However, the Court understands from the Republic that Petitioner elected not to contact Respondents before filing its fee application. (Dkt. #69 at 9). Had Petitioner done so, the instant fee application could have been obviated entirely. Put simply, the discussions might not have succeeded, but they should have been attempted. For this reason, the Court declines to award fees on fees.

## CONCLUSION

For the foregoing reasons, the Court awards attorneys' fees to G&S in the amount of **$31,687**, allocated equally between the Republic and Ecree. If either or both Respondents reimburse Petitioner for their share of the attorneys' fees award within sixty (60) days of the date of this Order, the parties shall promptly notify the Court and the certificate of default against that Respondent will be vacated. The Court further directs the parties to file a joint letter concerning next steps in this matter on or before **December 27, 2021**.

The Clerk of Court is directed to terminate the motion at docket entry 66.

SO ORDERED.

Dated:      October 27, 2021
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

17