M2GQcomC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

COMMISSIONS IMPORT EXPORT S.A.

                    Plaintiff

          v.                                19 MC 00195 (KPF)
                                            Remote Teleconference
REPUBLIC OF THE CONGO, et al.,

                    Defendants

------------------------------x
                                            New York, N.Y.
                                            February 16, 2022
                                            4:20 p.m.

Before:

                    HON. KATHERINE POLK FAILLA

                                            District Judge

                              APPEARANCES

GOULSTON & STORRS PC
     Attorneys for Plaintiff
CHARLES R. JACOB, III
ISABEL SUKHOLITSKY


ASHCROFT LAW FIRM LLC
     Attorneys for Defendant Republic of the Congo
MICHAEL SULLIVAN
NATE BRENNAN


NIXON PEABODY LLP
     Attorney for Defendant Ecree LLC
DANIEL A. SCHNAPP

M2GQcomC

```
 1                    (In chambers; case called)
 2               DEPUTY CLERK:  Would counsel please state your names
 3     for the record beginning with petitioner.
 4               MR. JACOB:  Good afternoon, your Honor.  This is
 5     Charles Jacob and Isabel Sukholitsky of Goulston & Storrs PC,
 6     for the petitioner and judgment creditor, Commissions Import
 7     Export.
 8               THE COURT:  Good afternoon to you, and thank you very
 9     much.
10               Representing the Republic of the Congo, please.
11               MR. SULLIVAN:  Yes.  Good afternoon, your Honor.  This
12     is Michael Sullivan.  I'm joined by Nate Brennan of the
13     Ashcroft Law Firm.
14               THE COURT:  Sir, thank you very much.  I understood
15     from my law clerk that Mr. Brennan might not be on our docket
16     at present.  Will he be filing a notice of appearance in the
17     near term or has he done so in the recent past?
18               MR. SULLIVAN:  He'll do it in the near term.
19               THE COURT:  I thank you.
20               And representing Ecree or Ecree, whose name I hear
21     pronounced differently by everyone.
22               MR. SCHNAPP:  Good afternoon, your Honor.  It's Daniel
23     Schnapp from Nixon Peabody.  I hope your Honor is well.  I have
24     been using Ecree to pronounce my client's name.
25               THE COURT:  I will do that then for this proceeding.
```

M2GQcomC

1    Thank you.

2           Let me begin by thanking you for your patience this

3    afternoon.  I have just come upstairs from a guilty plea

4    proceeding with an incarcerated defendant who was produced

5    later than we would have liked.  So I do appreciate that.  I

6    don't like making people hold, and I know your time is

7    valuable, but I do thank you for waiting for this.

8           So we are here this afternoon to discuss the

9    possibility of motions to dismiss filed by each of the

10   defendants.  But I want to begin by speaking with Mr. Jacob

11   because there's a bit of confusion that I know you didn't mean

12   to foster in me, but I guess I would like to understand what is

13   going on at the ICC?  The parties are back and forth in their

14   letters about whether there's something untoward going on,

15   whether counsel is involved in anything.  So please understand,

16   try and make this as nonjudgmental as possible and as factual

17   as possible.

18          Mr. Jacob, what's going on?

19          MR. JACOB:  So what's going on, your Honor, is this:

20   We have two judgments in the Southern District of New York:

21   One entered in 2014 and one entered in 2017.  They are based on

22   two completely different arbitration awards.  They're both very

23   large.  The 2014 judgment is 772 million.  The 2017 judgment is

24   190 million, both far in excess of the value of the condominium

25   at issue.

M2GQcomC

1          The Republic filed a proceeding seeking to impair us

2     with the ICC, seeking to reopen one of the arbitrations.  It

3     has nothing to do with the other, so it is completely

4     irrelevant here because we have a judgment far larger than the

5     value of the condominium either way.

6          So I wanted to start by making clear that nothing that

7     happens in this @Paris proceeding is going to affect this

8     proceeding.

9          THE COURT:  Mr. Jacob, please, excuse me, sir, and

10     this is, again, the problems with having this by telephone.

11          What you're saying is the request to reopen that has

12     been filed by the Republic of the Congo is a request to reopen

13     as to the 2014 judgment and not the 2017 judgment?

14          MR. JACOB:  Correct.

15          THE COURT:  Thank you.  All right.  So do I -- I mean

16     this in the nicest way.  Do I care about the preopening of the

17     proceeding from your perspective, sir?

18          MR. JACOB:  No, you shouldn't.  And to the extent we

19     responded to Mr. Sullivan's letter suggesting that this has any

20     kind of real importance, maybe we shouldn't have, your Honor,

21     to be honest, because it has no importance.  The other judgment

22     is 190 million, and the condominium is believed to be worth

23     7 million, so we wanted to clarify that though.  And I will

24     just add that the allegation made by the Republic is that the

25     dean of international arbitration, literally the most respected

M2GQcomC

1    international arbitrator in the world, took, they allege, Rolex

2    watches and cash from my client, basically; and that is

3    obviously being extremely sharply disputed both by the

4    distinguished arbitrator and by my client, and we think they

5    have no chance of getting this reopened, but at the end of the

6    day, it doesn't matter for the reason I said.

7          THE COURT:  Okay.  There was a bit of circularity to

8    that because you began by telling me at this time didn't

9    matter, then you told me what "it" was, and now you're telling

10   me again that it doesn't matter, but I do understand that.

11         Let me ask a different question, please, Mr. Jacob,

12   one of the reasons that I have premotion conferences is because

13   I want to see, for example, if I can persuade parties not to

14   file motions.  My belief, without even having heard from

15   Mr. Sullivan or Mr. Schnapp, is that I will not be so

16   successful, but is there any belief on the petitioner's part

17   that an amended petition for the turnover would be useful,

18   would forestall any of this litigation, or do you believe that

19   the petition as it now stands is absolutely appropriate and

20   that motion practice will reveal nothing else?

21         MR. JACOB:  We could amend it, your Honor, because we

22   have had discovery in these post-judgment proceedings, very

23   important discovery of the condominium board that showed

24   without question that what we allege in the petition; that the

25   condominium was bought for the daughter of the President of the

M2GQcomC

1    Republic.  In fact, was bought for the daughter of the

2    President of the Republic.  That's what the documents show very

3    clearly.  We could add evidentiary detail in an amended

4    petition and do that quickly.

5              We would also refer it to the U.S. Government's

6    proceeding which was begun after this one was in Miami, which

7    had absolutely parallel allegations to our allegations that the

8    president did virtually the exact same thing for his son with

9    respect to a luxury condominium apartment in Miami.  These

10   allegations can easily be added.

11             You know, this is a turnover proceeding, and I do

12   think Rule 12(b)(6) can be applicable.  If your Honor is going

13   to look at the pleading in a strict 12(b)(6) sense, we could

14   certainly add things we've learned since this proceeding

15   started, yes, we could.

16             THE COURT:  I'm not saying you have to, sir.  Please

17   don't read into that.  I just want to understand.  I did read

18   your opposition to the motion.  Excuse me for a moment.  That's

19   my phone, and I won't be able to turn it off.

20             I will hear from the respondents in a moment to see if

21   there is opposition to amendment, but I understand where things

22   are.

23             Mr. Jacob, before I turn again to the respondents, is

24   there anything else you'd like me to know?

25             MR. JACOB:  Not unless your Honor has specific

M2GQcomC

1    questions about why we think their motions to dismiss would be

2    meritless, but we addressed those topics in our January 17

3    letter, so I'll hold off on that unless your Honor has specific

4    questions.

5            THE COURT:  I do not at this time.  Thank you.

6            Mr. Sullivan, may I turn to you, or is it Mr. Brennan?

7            MR. SULLIVAN:  That would be Michael Sullivan, your

8    Honor.

9            THE COURT:  Thank you, sir.

10           Mr. Sullivan, let me begin with what I'm hoping is an

11   easier question.  Is there any proscription on the petitioner

12   amending its petition for turnover before your motions are

13   filed?

14           MR. SULLIVAN:  Well, certainly, your Honor, I would

15   much rather, you know, think about one motion to dismiss as

16   opposed to multiple motions to dismiss.  And if I thought that

17   there was some opportunity for the petitioner to cure the

18   defects in the petition, then I think I would be less inclined

19   to oppose an amended motion at this point in time.  But I

20   think, your Honor, that there are, you know, some deficiencies

21   that cannot be cured based on the allegations that are being

22   raised in the petition.

23           THE COURT:  Sir, I'm neither agreeing nor disagreeing

24   with you, but I think you and I are on the same page in that

25   I'd rather do this motion to dismiss practice once and not

M2GQcomC

```
 1    twice, but I appreciate what you're saying.

 2              Let me understand, sir, because you've now seen the

 3    opposition filed by petitioner.  Tell me why it's not correct.

 4              MR. SULLIVAN:  I think for a number of reasons, your

 5    Honor.  I think the petitioner misunderstands or misstates the

 6    law in several respects.  I'd like to really just identify

 7    three in particular, your Honor.

 8              One is the issue regarding immunity.

 9              The other is the deficiencies generally in the

10    pleading in the petition.

11              And the third is this issue about turnover under CPLR

12    5225(b).

13              If I can start with just immunity for a second, your

14    Honor, as the Court knows the Republic of Congo has disclaimed

15    any interest in the condo or the funds that led to the purchase

16    of the condo, and it still does.

17              However, your Honor, even if the funds that gave rise

18    to the purchase of the condo was successfully imputed to the

19    Republic of the Congo, under 18 U.S.C. 1610, your Honor, the

20    petition would be subject to a motion to dismiss based on

21    immunity.

22              Since there are no allegations in the complaint that

23    the property was used for any commercial activity by the

24    Republic of Congo in the United States, and there can never be

25    any allegations, your Honor, because there are none in that
```

M2GQcomC

1    effect, and we cited in our premotion conference letter, your

2    Honor, E M Limited v. the Republic of Argentina.  There is also

3    the Walthers v. Industrial and Commercial Bank of China, your

4    Honor.  651 F.2d 280 (2d Cir. 2011).  It's a Second Circuit

5    case that talks about the need for commercial activity beyond

6    just a waiver of immunity.

7          So as courts have noted, even when a foreign state has

8    waived immunity, it does not allow creditors to seize and

9    attach every asset of a debt in the United States, only those

10   assess that are used for commercial activity in the United

11   States.

12         As I mentioned at outset of the immunity issue, your

13   Honor, there are no allegations in the complaint that allege

14   the property was used for commercial activity by the Republic

15   of Congo.  In fact, the allegations are inapposite.  The

16   allegations are the funds were stolen from the Republic of

17   Congo and found their way here.  so They would never be able to

18   cure the issue about immunity.

19         THE COURT:  Mr. Sullivan, I will ask you to pause

20   right there, and I thank you.

21         What about the argument that is made by Mr. Jacob that

22   there is a different exception, the one set forth in 1610(a)(6)

23   which is an exception to immunity, I'm told, where the judgment

24   is based on an order confirming an arbitral award rendered

25   against the foreign state.

M2GQcomC

1          MR. SULLIVAN:  That is clearly an exception to the

2     immunity, your Honor, but that is not the only step that needs

3     to be taken.  So the first step, obviously, is whether or not

4     there's immunity.  The second step is whether or not the

5     property that's being claimed for purposes of seizure or

6     attachment is for commercial activity.  So it is really a

7     two-step process.  So even nation states that have waived

8     immunity in the United States based on one of those other

9     exceptions does not put all their assets in peril in the United

10    States.

11         And here Mr. Jacob argues not that the Republic of

12    Congo has purchased this property or put these funds.  He

13    claims that these funds were stolen from the Republic of Congo.

14    We certainly dispute that allegation as well, your Honor, and

15    it gets to the issue of his pleading and the source of what

16    he's using for his allegations.

17         So it's really a two-step process, your Honor.  It's

18    identifying the exception to immunity and then determining

19    whether or not the property that is being seized and attached

20    is being used for commercial activity in the United States by

21    the nation state.

22         THE COURT:  I see.  Sir, tell me, please, the second

23    hurdle that you believe is insurmountable are the deficiencies

24    in the pleading.  Now, perhaps certain of these might be

25    remedied by repleading, but let me hear about those you believe

1   will not.

2            MR. SULLIVAN:  I don't know whether or not you will,

3   if ever, be able to, your Honor, but obviously if you read the

4   pleadings, it's information and belief based principally on the

5   allegations from the *Global Witness* story.  And as we

6   mentioned, your Honor, on several occasions, *Global Witness* is

7   a self-described campaigner, and it's not an investigative

8   journalist outfit.  The article that was published in the *New*

9   *York Times*, even *the New York Times* acknowledges it didn't

10  confirm the *Global Witness* report.

11           And the *Global Witness* report was a campaign piece.

12  It was titled "Trump's Luxury Condo:  A Congolese State

13  Affair."  Our argument, your Honor, in a motion to dismiss will

14  be that the *Global Witness*-sourced allegations do not satisfy

15  the pleading requirements for petitioner's claim under either

16  D.C.L. 276, which, notwithstanding Mr. Jacob's claim that we

17  raised 9(b) pleading requirements under 276 in bad faith.  In

18  fact, the law is clear that 276 does need to meet the 9(b)

19  particularity pleading requirements as it relates to fraud, so

20  they're certainly deficient in the complaint.

21           And even under the second D.C.L. 273-A, your Honor,

22  were not subject to 9(b) higher pleading requirements.  And for

23  the record, your Honor, we never said in our premotion

24  conference letter that 273-A did need to meet the higher

25  pleading requirements under 9(b), it still falls far short of

M2GQcomC

1   what is needed to satisfy plausibility requirements under

2   *Twombly*.

3          THE COURT:  I see.  And then your turnover argument,

4   please, sir?

5          MR. SULLIVAN:  Your Honor, this is pretty

6   straightforward.  It is certainly in our premotion conference

7   letter.  I reviewed Mr. Schnapp's letter on behalf of Ecree,

8   and I think he raised it as well.  But the petitioner's request

9   for turnover is under CPLR 5225(a), and as we pointed out,

10  5225(b) -- not (a), your Honor -- applies to personal property,

11  not real property.  And Mr. Jacob's response is, again,

12  claiming that we're frivolously raising these arguments, and

13  his petition references Section 5236.  But, your Honor, we

14  would argue 5236 is unhelpful at this stage because that

15  section of the CPLR relates only to the process of a sale, not

16  an authority to turn the property over.

17         It is for those reasons and what we've outlined in our

18  premotion conference letter, your Honor, we think would be the

19  basis of our motion to dismiss.

20         THE COURT:  Mr. Sullivan, two points:  Number one is

21  given the substance of the discussions you and I are having, I

22  am going to ask you, please, to obtain a transcript of this

23  conference in the ordinary course so that I have it when the

24  motions are filed, and I thank you in advance for doing that.

25         Number two is, I think you're going to be able to

M2GQcomC

1    answer this question quickly, but I have no way to persuade you

2    not to file this motion.  Is that correct, sir?

3              MR. SULLIVAN:  That's correct, your Honor.

4              THE COURT:  Of course.

5         Mr. Schnapp, let me hear from you as well, please.

6              MR. SCHNAPP:  Your Honor, I don't have much to add.  I

7    don't think that we would -- in addition to the Republic, I

8    also think that we would not persuaded, respectfully.  I think

9    that our grounds are more or less set forth in the premotion

10   letter.  I think that a number of them probably would be echoed

11   by what the Republic just said.

12             I think that there is -- obviously, we agree that the

13   basis of the petition to the extent that it relies upon the

14   *Global Witness* article, it raises a number of *Twombly* issues as

15   well as the fact that it does not meet in its current state

16   what we consider to be the appropriate pleading standards.

17             So, for those reasons as well as the reasons we've set

18   forth in our correspondence to your Honor, we would like to

19   proceed with our motion to dismiss.

20             THE COURT:  Mr. Schnapp, let me ask a related

21   question.  It was the first question I asked of Mr. Sullivan.

22   Given my own disinclination for two rounds of motion practice,

23   is there any legal reason that I may not permit Mr. Jacob to

24   amend his petition for turnover?

25             MR. SCHNAPP:  As far as a legal reason, your Honor,

1   the only thing I would think of is the possibility that he

2   would otherwise need to move for it, but I understand what the

3   Court is saying, which is the Court should not have to be

4   burdened with multiple motions to dismiss.  So I think that

5   probably trumps whatever that requirement is, and I think your

6   Honor is probably predisposed to providing that leave to

7   petitioner in the first instance.

8           So, based upon that, I don't really have a good reason

9   why the petition should not be amended.  I can't obviously

10  speak for my client out of hand, but I would ask that perhaps

11  we'd have a very short period of time just to confirm with our

12  client that there is no objection, but I can't think of any

13  other reason offhand, your Honor.

14          THE COURT:  And I do appreciate that.  I certainly

15  don't want you to run afoul of anything with your client.  But

16  I don't see that there is a problem with me ordering the

17  amendment if Mr. Jacob wishes to amend.  So I think what I will

18  instead is I will order it, and if in the next day or so you

19  find a legal authority that tells me that I can't and it's

20  reversible error, you will let me know.

21          Mr. Jacob, I cannot prevent -- as hard as I've tried,

22  I cannot persuade either Mr. Sullivan or Mr. Schnapp not to

23  file a motion to dismiss.  So tell me, please, sir, what time

24  period would you like to amend your petition, if indeed you

25  wish to do so?

M2GQcomC

1      Mr. Jacob, you're coming in quite faintly.  You may

2      have to unmute yourself.

3           MR. JACOB:  Sorry.  We would like two weeks, your

4      Honor, which should be plenty of time for us.  We would also

5      like leave to take discovery, notwithstanding the proposed

6      motions to dismiss.  This is a post-judgment proceeding, so

7      it's not like the typical civil action where we are just kind

8      of on the first round.  The Republic, as is in our papers, is

9      already in contempt of court in Judge Leon's court in the

10     District of Columbia at the rate of $80,000 a week because they

11     would not provide post-judgment discovery there.

12          They're here.  Mr. Sullivan is here.  We still ask why

13     if the Republic has no interest in the apartment, as they say,

14     they're spending so much time and effort defending this case.

15          The main point is that judgment creditors get

16     post-judgment discovery as a matter of course, including

17     discovery that's broad that traces the funds of a recalcitrant

18     sovereign judgment debtor, as the Argentina decisions of the

19     Second Circuit and other courts made clear.

20          So we would propose amending within two weeks but also

21     within two weeks serving requests for production of documents,

22     depositions notices and interrogatories to the respondents.

23          THE COURT:  One moment, please.  Thank you for

24     reminding me, Mr. Jacob, that that was an open issue.  I did

25     understand that, and I really should have asked Mr. Sullivan

M2GQcomC

1    and Mr. Schnapp to address that issue, so I will do that now.

2    Thank you.

3           Mr. Sullivan, excuse me for coming back to you, sir.

4    Your position on discovery given the argument that Mr. Jacob

5    just made.

6           MR. SULLIVAN:  Your Honor, we would oppose discovery

7    at this stage.  We think that even the amended complaint will

8    be subject to a motion to dismiss, and certainly while the

9    Court is trying to be efficient and limit cost of the parties,

10   and I greatly appreciate that, but it's a complete fishing

11   expedition on the part of Mr. Jacob at this point in time based

12   on the allegations of the complaint, your Honor.  So the

13   Court's allowed an amended petition, and will allow that to

14   proceed in the ordinary course, and give us an opportunity to

15   review it.  Absent something extraordinary being in there, your

16   Honor, it's likely we will be revisiting with a motion to

17   dismiss, but we respectfully ask that discovery be stayed until

18   we have an opportunity to review and respond to the amended

19   complaint.

20          The petitioner is not in any jeopardy in terms of not

21   getting discovery, your Honor, because, as I understand it, the

22   property is still owned by Ecree, and the Court has instructed

23   Ecree not to sell the property, but I'll defer to Mr. Schnapp

24   on that.

25          THE COURT:  Thank you.  Mr. Sullivan, just given what

M2GQcomC

```
1    I'm hearing about a couple of weeks to amend.  So, imagining --
2    and let me just put this down, I will give a little bit more
3    time, March 4 will be the date that I will expect the amended
4    petition to be filed.
5           How much time would you need for a motion?  Are you
6    looking, sir, for example, for April 4 or something greater or
7    lesser than that?
8           MR. SULLIVAN:  I think April 4 would be fine, your
9    Honor.
10          THE COURT:  Mr. Schnapp, turning to you, sir, let me
11   hear your position on discovery and your position on an April 4
12   filing date.
13          MR. SCHNAPP:  I would agree with counsel for the
14   Republic for the reasons stated that it would be, I think,
15   highly inappropriate to proceed with discovery at this time.
16   It's true that the apartment is currently subject to the
17   Court's order.  It is going to remain subject to the Court's
18   order.  There is no prejudice to the petitioner.  Clearly, if
19   the motions are successful, there will be no need for
20   discovery.  And as for the April 4 date, I certainly have no
21   objection to that.
22          THE COURT:  Okay.
23          MR. JACOB:  Your Honor, if I could be you heard
24   further on discovery?
25          THE COURT:  Is this Mr. Jacob?
```

M2GQcomC

1         MR. JACOB:  Yes, it is, your Honor.  Thank you.

2         THE COURT:  Thank you.  Go ahead, sir.

3         MR. JACOB:  If these judgments were judgments that had

4    been entered in your court after typical civil proceedings, we

5    would not be in the position of the judgment debtor blocking

6    discovery.  Judgment creditors are absolutely entitled to

7    post-judgment discovery.  So what the respondents are trying to

8    do is say because we're looking for turnover of one particular

9    asset, we don't get post-judgment discovery, and that is

10   completely illogical, and, I would submit, not the law.

11        If your Honor had entered a billion dollars of

12   judgments against respondents like respondents here, or

13   defendants in a civil case, let's say, you would not be denying

14   the judgment creditor, creditor discovery.  And I don't believe

15   that it's right for you to deny discovery here.  We should be

16   allowed to proceed.

17        The turnover proceeding is an aspect of the overall

18   situation in this court where there's a billion dollars of

19   judgments against the Republic, and we are entitled to

20   discovery.

21        THE COURT:  All right.  Thank you, sir.  I'm going to

22   ask the parties to just wait on hold for a moment.  I just want

23   to think about the issue that the parties are raising about

24   discovery.  I'll get back to you momentarily.  Please hold.

25        (Pause)

M2GQcomC

1     THE COURT:  Counsel, I thank you very much for your

2     patience.

3          I am inclined to let discovery proceed during the

4     pendency of the motion, and that is in part because of the

5     history of noncompliance that has been outlined in petitioner's

6     letters, and that is because irrespective of the resolution of

7     the turnover motion, it occurs to me that Mr. Jacob would be

8     very likely permitted to take discovery as a judgment creditor

9     of the Republic and of Ecree.  So I am going to allow

10    discovery, and I will permit the requests that Mr. Jacob

11    outlined earlier to be filed.

12         Just so that I can identify finally the schedule for

13    the motions in this case, this is what I propose:  March 4 for

14    the amended petition.  April 4 for each of the respondent's

15    opening briefs.  May 18 for a single response from petitioner

16    to the two motions, because I think there are many overlapping

17    issues and facts.  If that means that the petitioner needs to

18    go over slightly the page limits, I will allow it.  I would

19    think that 35 pages would be sufficient, and you'll tell me and

20    see what I say if you think more is needed.  And then June 3

21    for any reply brief.

22         So that's the schedule that I'm setting.  Discovery

23    will go forward.  As always, I welcome the opportunity to try

24    and get folks to resolve this, but I don't think that's going

25    to happen at this time.

M2GQcomC

1    Mr. Jacob, those are all the issues I wanted to

2    address today.  Anything else from you, sir?

3    MR. JACOB:  I don't think so, your Honor.  Thank you

4    very much.

5    THE COURT:  Thank you.

6    Mr. Sullivan, anything else today, sir?

7    MR. SULLIVAN:  Your Honor, just on the issue of

8    discovery, I'm concerned that we're going to be back before you

9    in terms of what Mr. Jacob is going to be seeking for purposes

10   of discovery, and I know that he was trying to persuade the

11   Court this is a typical judgment debtor that should be subject

12   to an examination, you know, based on a matter that's been

13   litigated in a judgment against the other debtor in the United

14   States.  I know the Court knows this is an arbitration in a

15   foreign jurisdiction that was registered in the United States,

16   and the petition is about seeking the condominium in New York.

17   Knowing how Mr. Jacob has responded up to this point

18   in time in terms of our communications, I'm suspecting we're

19   going to see some broad-based discovery of a judgment debtor in

20   the United States.  And I have not researched the point, your

21   Honor, but the question becomes whether there's any authority

22   to do that type of broad-based discovery based on a turnover

23   request for an asset in New York.  So I'm wondering, your

24   Honor, if the Court might limit discovery just to the context

25   of this issue about the immunity claim that would be raised

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

M2GQcomC

```
1    that the property is not subject to some type of execution or

2    attachment because it's not used for commercial purposes by the

3    Republic of Congo.

4              THE COURT:  Mr. Sullivan, I'm not inclined at this

5    time to limit discovery in the manner that you've suggested.

6    You began this section of your discussion by noting a concern

7    that we would be back before me again.  I fully expect that we

8    will be, sir, and so I imagine there will be fights about the

9    scope of discovery.  And by the time Mr. Jacob formulates and

10   serves his requests, you and I will be better researched on

11   those issues.

12             So I'm not going to limit them here in this

13   conversation.  Would I limit them in response to letter motion

14   practice from the parties?  Perhaps.  And I guess we'll both be

15   looking for that, but thank you.

16             MR. SULLIVAN:  Thank you, your Honor.

17             THE COURT:  Mr. Schnapp, anything else today, sir?

18             MR. SCHNAPP:  No, your Honor.  I appreciate the

19   Court's time.

20             THE COURT:  Of course.

21             Again, I thank you all for your patience this

22   afternoon.  I wish you safety and continued safety and

23   continued good health in this pandemic.  We are adjourned.

24   Thanks so much.

25             (Adjourned)
```