UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMISSIONS IMPORT EXPORT S.A.,<br><br>    Petitioner-Judgment Creditor,<br><br>-against-<br><br>REPUBLIC OF THE CONGO, as Judgment Debtor, and ECREE LLC, as Fraudulent Transferee of the Judgment Debtor,<br><br>    Respondents. | 1:19-mc-00195 (KPF) |

## SECOND AMENDED PETITION FOR TURNOVER OF PROPERTY

Petitioner-Judgment Creditor Commissions Import Export S.A. ("Petitioner"), by its attorneys Goulston & Storrs PC, as and for its Second Amended Petition for Turnover pursuant to the Court's inherent power to enforce its own judgments, and/or alternatively pursuant to New York Civil Practice Law and Rules ("CPLR") §§ 5201(b), 5206(e), 5236 and 5239, and Fed. R. Civ. P. 69, with respect to a condominium unit known as Unit 32G at Trump International Hotel & Tower Condominium, 1 Central Park West, New York, New York (the "Condominium"), which is property of Respondent-Judgment Debtor Republic of the Congo (the "Republic"), and of which Respondent Ecree LLC ("Ecree") is the nominal owner and fraudulent transferee, hereby alleges as follows:

### Nature of this Proceeding

1. This is a proceeding to enforce final judgments of this Court that Petitioner holds against the Republic by execution on its interests in the Condominium.

2. The Condominium was purchased with funds of the Republic and is therefore property of the Republic subject to execution on Petitioner's judgments.

**The Judgments**

3. The Republic has been in debt to Petitioner since at least 1992 and was found liable to Petitioner under two long-final arbitration awards.

4. Both of those arbitration awards were governed by the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), implemented as federal law at 9 U.S.C. §§ 201 et seq.

5. One arbitration award resulted in a judgment in the amount of €567,184,160.72 and $855,000 being entered against the Republic in the United States District Court for the District of Columbia on October 9, 2013. That judgment was duly registered in this Court on June 18, 2014 under Case No. 14-mc-0187 (the "First Judgment").

6. This Court amended the First Judgment on July 17, 2020, converting the sums due into U.S. dollars and thus providing that Petitioner is entitled to recover from the Republic the sum of $772,562,221.53 as of December 31, 2019, plus $2,324.13 per diem thereafter. A copy of the First Judgment, as amended by this Court, is annexed as Exhibit 1.

7. By Order of the United States District Court for the District of Columbia dated June 15, 2017 (copy annexed as Exhibit 2), Petitioner has been authorized pursuant to 28 U.S.C. § 1610(c) to "pursue all applicable methods of attachment and execution" so as to satisfy the First Judgment.

8. A second judgment, on another arbitration award, in the amount of $189,781,887 (as of July 31, 2015), was entered against the Republic in the District Court for the District of Columbia on August 26, 2015. That judgment was likewise duly registered in this Court, on May 26, 2017, under Case No. 17-mc-0175 (the "Second Judgment;" together with the First Judgment, the "Judgments"). A copy of the Second Judgment is annexed as Exhibit 3.

9. This Court (Hon. Katherine Polk Failla) determined by Order dated July 31, 2020 pursuant to 28 U.S.C. § 1610(c) (copy annexed as Exhibit 4), that a reasonable period of time has elapsed such that Petitioner may enforce the Second Judgment.

10. This proceeding seeks turnover of the Condominium in partial satisfaction of the Judgments, both of which remain substantially unsatisfied in an amount that far exceeds the value of the Condominium.1

11. The Condominium is subject to turnover and sale pursuant to the Court's inherent power to enforce its own judgments and/or, alternatively, pursuant to CPLR §§ 5201(b), 5206(e), 5236 and 5239, and Fed. R. Civ. P. 69.

12. There is no immunity from this relief under 28 U.S.C. § 1610 because the Condominium is property of the Republic "used for a commercial activity" by the Republic within the meaning of 28 U.S.C. § 1610(a); and because the First Judgment and the Second Judgment are based on orders confirming arbitral awards against the Republic as set forth in 28 U.S.C. § 1610(a)(6).

## Jurisdiction and Venue

13. Petitioner-Judgment Creditor is a company incorporated under the laws of the Republic of the Congo.

14. Respondent-Judgment Debtor the Republic is a "foreign state" for purposes of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603(a).

---

[1] With interest, which continues to accrue, the two Judgments exceed $1 billion. In addition, the Republic has been held in contempt of court by the United States District Court for the District of Columbia for failure to comply with post-judgment discovery, as a result of which it also owes fines to Petitioner "in the amount of $5,000 per week, doubling every four weeks until reaching a maximum of $80,000 per week." *See* Exhibit 2 hereto. Thus, while Petitioner has achieved some recoveries against the Republic in other countries, the Condominium, which has an estimated value of $7.1 million, is far from enough to satisfy even the First Judgment.

15. On information and belief, Respondent Ecree is a limited liability company organized under the laws of the State of New York with its only ostensible asset – the Condominium – located in this District.

16. This Court has personal jurisdiction over the Republic:

    (a) By reason of its inherent power to enforce the First Judgment and the Second Judgment, which are judgments of this Court;

    (b) Because the Condominium is located in this District and, as set forth below, the Republic has a property interest in the Condominium;

    (c) pursuant to 28 U.S.C. § 1330(b), which provides that this Court can exercise personal jurisdiction over a foreign state in an action with respect to which the foreign state is not entitled to sovereign immunity under 28 U.S.C. §§ 1605-1607. The Republic is not entitled to sovereign immunity under 28 U.S.C. § 1605 or § 1609, because: (i) this case falls under the exception from immunity for cases brought to enforce arbitration awards that "are or may be governed by a treaty or other international agreement in force in the United States calling for the recognition and enforcement of arbitral awards," 28 U.S.C. §1605(a)(6); and (ii) the property at issue – the Condominium -- is not immune from execution under 28 U.S.C. § 1610.; and

    (d) Pursuant to 9 U.S.C. § 201 *et seq.*, because the arbitration awards on which the Judgments are based were governed by the Convention.

17. This Court has subject matter jurisdiction because this proceeding concerns enforcement of judgments of this Court. This Court also has subject matter jurisdiction pursuant

to 9 U.S.C. § 203 because this is a proceeding to enforce arbitration awards governed by the Convention.

18. The Court has personal jurisdiction over Ecree because it is a New York LLC with its only ostensible asset and place of business located in this District.

19. Venue is proper in this District (a) because the First Judgment and the Second Judgment are valid, unsatisfied judgments of this Court, and (b) pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(f)(1) because the property that is the subject of this proceeding, the Condominium, is located in this District.

## **The Condominium Is the Republic's Property**

20. On information and belief, including, as discussed below, (i) post-judgment discovery taken in this proceeding, (ii) detailed allegations of the United States Government in a parallel proceeding in the Southern District of Florida, and (iii) detailed reporting in the *New York Times* and *Global Witness* (*see* Exhibits 5 and 6 hereto), the Condominium was purchased with funds of the Republic that were fraudulently transferred from the Republic by its kleptocratic ruling family to purchase the Condominium in the name of Ecree, for the use of Claudia Lemboumba Sassou-Nguesso (the "President's Daughter"), the daughter of Denis Sassou-Nguesso, President of the Republic (the "President").

21. The Condominium is therefore the Republic's property.

22. On information and belief, the Republic fraudulently transferred the funds to purchase the Condominium through a series of sham transactions: (i) first, by an initial payment of $675 million that was sent by the Congolese Treasury; (ii) through an entity called Asperbras LLC ("Asperbras"); (iii) then through an Asperbras subsidiary called Energy & Mining Asp. Inc. ("Energy & Mining") to a Cypriot company called Sebrit Limited, which had been incorporated only two days earlier and had neither a single identifiable employee nor any existing genuine

business, and of which the beneficial owner was the President's Daughter; and (iv) then, after Sebrit received a payment of almost $20 million in the Republic's funds from Energy & Mining, to Ecree, a newly-formed New York LLC which used $7.1 million of the Republic's funds to purchase the Condominium.

23. Ecree was incorporated on May 30, 2014, only two months prior to the purchase of the Condominium, and on information and belief has and had no purpose other than to be the sham alter ego entity through which the Republic could and did use fraudulently transferred funds of the Republic to purchase the Condominium.

24. Discovery taken in proceedings to enforce the First Judgment and Second Judgment to date has confirmed that the Condominium was purchased for the use of and as a United States real estate investment of the Republic, for use by the President's Daughter, comprising "commercial activity" within the meaning of 28 U.S.C. § 1610.

25. The President's Daughter is an agent of the Republic and, upon information and belief from published sources, serves as the President's special adviser as to communications and media, formerly with a title to that effect and continuing irrespective of title.

26. The Board of Managers of the condominium association that includes the Condominium produced, pursuant to subpoena, documents showing, *inter alia*, that the occupant of the Condominium would be the President's Daughter. *See* Exhibit 7 (documents produced by the Board of Managers in previous post-judgment discovery).

27. It is abundantly clear that Ecree was and is simply an alter ego of the Republic, created for the benefit of the Republic to conceal the use of the Condominium by the Republic through the President's Daughter. Exhibit 7 shows that the President's Daughter <u>submitted her own personal financial statement and references as an applicant to purchase the Condominium</u>;

this documentation also refers to her as the "owner" and the "purchaser." *See* Exhibit 7, first page ("Legal Mailing Address for Unit Owner[]" stated to be the address in Paris of "Claudia Lemboumba," the President's Daughter, not Ecree); *id*., second page (Financial Statement submitted was that of "Claudia Lemboumba," not Ecree); *id*., third-fifth pages (letters of reference for purchaser are for "Claudia Lemboumba Sassou Nguesso," not Ecree).

28. The Republic's denial in this Court of these documented facts is patently false. The Condominium was purchased with funds of the Republic as a commercial investment, for the use and benefit of Republic through the President's Daughter.

29. Indeed, the President's Daughter's financial statement (Exhibit 7, second page) showed personal assets of substantially less than $7,100,000 (amount redacted for filing). This confirms that the cash of $7,100,000 being used to purchase the Condominium[2] for the President's Daughter was not her money – it was the Republic's money.

30. Confirming that the Republic's ownership of the Condominium is a commercial activity, on February 21, 2020, one Jose Veiga, claiming to be the beneficial owner of Ecree, filed a Declaration in this proceeding (ECF Doc. No. 57) stating that "Ecree LLC was founded May 2014 in New York, NY for the purpose of owning real estate in New York" (emphasis added). The Condominium is thus an investment in luxury real estate in Manhattan of a sort any private citizen might make, freely alienable (but for this case), and by definition a form of "commercial activity" within the meaning of 28 U.S.C. § 1610. The Condominium is used in such commercial activity by the Republic through its agent, the President's Daughter.

31. The Republic purchases property such as the Condominium through elaborate fraudulent conveyance schemes such as that described above, and in the names of alter egos such

---

[2] The Condominium was purchased for all cash, with no mortgage.

as Ecree, because the Republic is a sovereign that regularly seeks to defraud its creditors such as Petitioner by owning assets under names other than its own.

### The United States Department of Justice Has Confirmed the Facts of this Case in the Parallel Proceeding in Florida

32.     It is the stated position of the United States Government that the President of the Republic and his family routinely use funds of the Republic to buy condominium units in the United States.  Thus, in 2020, the Department of Justice ("DOJ") filed a Complaint (Exhibit 8 hereto)[3] in the Southern District of Florida alleging in detail how funds of the Republic were used by the President's ruling family to buy a luxury condominium in Miami for the President's son.  The DOJ describes this – as here – as a scheme "to launder money embezzled from" the Republic for the benefit of the President's children.  Among the well-documented points made by the DOJ:

- The President and his family members have been investigated and charged with "corruption, money laundering and related crimes around the world" (Exhibit 8, ¶ 12) involving their "pattern in acquiring real property" (*id*., ¶ 72), generally in a manner substantially identical to how they used Ecree here.

- The President allowed the President's son to "embezzle[] millions of dollars" from the Republic and its state-owned entities (*id*., ¶ 17); and

- This was done through "a network of bank accounts in the names of shell companies and nominees to attempt to conceal the money" (*id*. ¶ 18).

---

[3] *United States of America v. Real Property Located at 900 Biscayne Boulevard, Unit #6107, Miami, FL 33132*, 1:20-cv-22427-MGC (S.D. Fla.).

33. Ecree is not a legitimate company in any respect.[4] It is an alter ego of the Republic -- a shell company set up by the President and his bagmen to carry out a scheme already documented in detail by the DOJ. What is now before the Court is simply the New York branch of the scheme, by which the Republic got itself a $7.1 million luxury condominium investment on Central Park West, for use by the President's Daughter, but belonging to the Republic, and against which the Judgments can therefore be enforced.

## The Acts of the President and His Family Are Attributable to the Republic

34. There is no meaningful distinction between the Republic and the President. The Republic has not operated as a democracy for decades and the decisions made for and on behalf of the Republic are done so at the direction of the President and his inner circle in any event. Indeed, dating as far back as 1991, there exists reporting of high-level Republic ministers obtaining loans on behalf of the Republic only for portions to be siphoned off. *See* Exhibit 10, Reuters News, *Former Congo Minister Held in Fraud Probe*.

35. Further compounding the degree to which the Republic cannot and does not operate separate and apart from the President is that the President employs family and loyalists to form his government. *See* Exhibit 11, Agence France Press, *Congo's Sassou Nguesso turns to inner circle for new government*. All significant ministerial positions in the Republic's government are held by individuals controlled by the President. The actions of the President, carried out through his inner circle of ministers, constitute actions of the Republic.

36. Each of the individuals appointed as ministers or similar high ranking government officials are agents of the Republic. For example, the President has appointed his son, Denis

---

[4] Indeed, Ecree, a New York LLC, has been listed as "Suspended" on the records of the New York Secretary of State. *See* Exhibit 9 hereto.

Christel Sassou Nguesso as head of an Internal Cooperation ministry. His son in law, Hugues Ngouelondele was appointed sports minister and a close friend to the President, Pierre Oba, remains in charge of strategic mining industries portfolio. *See* Exhibit 12, The Guardian, *Sassou rules like an emperor while Congolese die from extreme poverty.* The President's Daughter held the title of special adviser to the President for communications and media and, on information and belief, continues in that role without a title.

37. In 2014 when the Condominium was purchased, the Republic's Minister of Finance was Gilbert Ondongo, on information and belief, a long-time friend and ally to the President who had previously worked for the President during his campaign in July 2009. As described above, it was the Ministry of Finance that first transferred funds through Asperbras which later made its way to Ecree for purposes of purchasing the Condominium.

38. Because of the above-described manner in which the Republic operates, all acts set forth herein of the President, his family and his close associates are attributable to the Republic and such persons at all times acted as agents of the Republic, in fraudulently transferring the funds in question and arranging the purchase of the Condominium.

39. Because fraudulently transferred funds of the Republic were used to purchase the Condominium, as a matter of both fact and law the Condominium is property of the Republic and subject to execution upon the First Judgment and the Second Judgment.

**FIRST CLAIM FOR RELIEF**
**(Declaration that the Condominium Is**
**Property of the Republic Against Which**
<u>**Petitioner's Judgments May Be Enforced)**</u>

40. Petitioner repeats and realleges the allegations of paragraphs 1 - 39, above, as if fully set forth herein.

41. The Court should determine and enter a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that the Condominium is property of the Republic against which the First Judgment and/or the Second Judgment may be enforced.

42. Having issued such a declaration, the Court should exercise its inherent power to enforce Petitioner's Judgments against the Condominium.

43. The Court should issue an Order and Judgment directing the United States Marshals Service to execute on the Condominium pursuant to Fed. R. Civ. P. 69 and CPLR §§ 5201(b), 5206(e), 5236 and 5239 by selling the Condominium and applying the proceeds of such sale to the partial satisfaction of the Judgments.

## SECOND CLAIM FOR RELIEF
### (Turnover Based on Setting Aside of Fraudulent Transfers)

44. Petitioner repeats and realleges the allegations of paragraphs 1 - 43, above, as if fully set forth herein.

45. Based on the First Judgment and the Second Judgment, this Court has ancillary jurisdiction to set aside fraudulent transfers, find that the Condominium is property of the Republic, and order that it be turned over in partial satisfaction of the Judgments. The Court also has subject matter jurisdiction pursuant to 9 U.S.C. § 203, as this is "[a]n action or proceeding falling under the Convention," being a proceeding to enforce arbitration awards rendered pursuant to the Convention as set forth above, and therefore is deemed to arise under the laws and treaties of the United States.

46. The transfers referred to above, from the Republic ultimately to Ecree as the Republic's front for the purchase of the Condominium (the "Fraudulent Transfers"), were made without fair consideration when the Republic had an unsatisfied judgment (*i.e.*, the First Judgment) docketed against it, without regard to the Republic's actual intent, and were therefore

fraudulent as to Petitioner as a judgment creditor of the Republic under New York Debtor and Creditor Law ("DCL") 273-a, which provides:

> Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

47. The Fraudulent Transfers were also made with actual intent to hinder, delay and defraud creditors of the Republic, and were therefore also fraudulent as to Petitioner under DCL 276, which provides:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

48. Accordingly, pursuant to DCL 278, Petitioner is entitled to have the Fraudulent Transfers set aside and annulled such that the Condominium should be sold and the proceeds should be applied to satisfy the First Judgment.

49. Pursuant to DCL 278, the applicable provisions of CPLR Article 52 and Fed. R. Civ. P. 69, Petitioner is entitled to an order and judgment: directing the turnover to Petitioner of the Condominium; directing the Marshal to levy on the Condominium and sell it in partial satisfaction of the First Judgment; and granting such other and further relief as may be appropriate so as to undo the Fraudulent Transfers and allow Petitioner to enforce the First Judgment against the Condominium.

### THIRD CLAIM FOR RELIEF
### (Turnover on Ground that Ecree Is Alter Ego of Republic)

50. Petitioner repeats and realleges the allegations of paragraphs 1 - 49, above, as if fully set forth herein.

51. The Court has jurisdiction over this claim for relief pursuant to 9 U.S.C. § 203, as this is "[a]n action or proceeding falling under the Convention," being a proceeding to enforce arbitration awards rendered pursuant to the Convention as set forth above, and therefore is deemed to arise under the laws and treaties of the United States. Petitioner also hereby preserves its position that the Court has ancillary jurisdiction over this claim for relief.

52. An additional ground for turnover of the Condominium in satisfaction of the Judgments is that Ecree is an alter ego of the Republic.

53. Ecree had and has no purpose other than serving as a "front" entity for the Republic's purchase of the Condominium. Jose Veiga is simply an agent of the Republic creating shell companies like Ecree for the Republic's benefit. In fact, the Republic so completely dominates and controls Ecree at all times such that, at the time of the purchase of the Condominium, Ecree had no separate will of its own – hence, the purchase of the Condominium for no purpose benefitting Ecree but only benefitting the Republic and its agent the President's Daughter by establishing a real estate investment in New York.

54. This domination of Ecree by the Republic was used to commit a fraud and wrong against Petitioner – namely, to attempt to shield assets of the Republic in New York from enforcement of the Judgments of this Court.

55. Because Ecree is no more than an alter ego of the Republic, the Court should declare the Condominium to be property of the Republic and direct that enforcement of the Judgments proceed as against the Condominium.

**WHEREFORE**, Petitioner respectfully requests that the Court enter an Order and Judgment granting relief against Respondents and the Condominium as requested above, and granting such other and further relief as the Court may deem just and proper.

Dated: June 16, 2023

                                            GOULSTON & STORRS PC

By: _____
      Charles R. Jacob III
      Isabel P. Sukholitsky
      885 Avenue, 18th Floor
      New York, New York 10022
      Telephone: (212) 878-5143
      Facsimile: (212) 878-6911
      cjacob@goulstonstorrs.com
      isukholitsky@goulstonstorrs.com

      *Attorneys for Petitioner-Judgment CreditorCommissions Import Export S.A.*